Jean Michael POURNY, Plaintiff,

v.

MAUI POLICE DEPARTMENT, COUNTY OF MAUI, et al., Defendants.

No. Civ. 99–265 ACK.

United States District Court, D. Hawai'i.

Aug. 14, 2000.

Richard D. Gronna, Honolulu, HI, for Jean Michael Pourny, plaintiff.

Victoria J. Takayesu, Office of the Corporation Counsel—Maui, Wailuku, Maui, HI, for Maui Police Department, County of Maui, a Municipal corporation, defendant.

Gary N. Morikawa, Honolulu, HI, for Samuel Viveiros, Deputy Sheriff, defendant.

Victoria J. Takayesu, Office of the Corporation Counsel—Maui, Wailuku, Maui, HI, Gary N. Morikawa, Honolulu, HI, for Phillip Bugado, Jr., Police Officer, defendant.

Faye M. Koyanagi, Koyanagi & Fong, Honolulu, HI, Michele–Lynn E. Luke, Richards & Luke, Honolulu, HI, for Miyake Concrete Accessories, Inc., domestic corporation, defendant.

Kendall J. Moser, Office of the Attorney General—Hawaii, Honolulu, HI, for Patrick Sniffen, Deputy Sheriff, Daniel Fernandez, Keith Kaneshiro, Director of PSD, defendants.

James Takayesu, Victoria J. Takayesu, Office of the Corporation Counsel—Maui, Wailuku, Maui, HI, for Thomas Phillips, Chief of Police, defendant.

### ORDER DENYING PLAINTIFF'S MOTIONS TO STRIKE, GRANTING IN PART AND DENYING IN PART MIYAKE CONCRETE ACCESSORIES, INC.'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

KAY, District Judge.

### INTRODUCTION

Jean Michael[1] Pourny ("Plaintiff") filed a seven-count complaint against the Maui Police Department ("MPD"), police officer Phillip Bugado, Jr., and chief of police Thomas Phillips (collectively, "County Defendants"); deputy sheriff Samuel Viveiros; deputy sheriff Patrick Sniffen; state employee Daniel Fernandez; director of the Department of Public Safety Keith Kaneshiro;[2] and Miyake Concrete Accessories ("MCA") on April 13, 1999. The crux of Plaintiff's complaint is that when Bugado, Viveiros, and employees of MCA served a civil Writ of Execution on him on April 14, 1997, they violated his federal and state constitutional rights, failed to execute the Writ as required by state law,

---

1. Plaintiff's name is "Jean Michael" on the complaint, the docket sheet, and on the various filings, but it appears that his name is "Jean Michel." *See, e.g.,* Pourny Decl., attached to Pl.Opp.Cty Defs.Mot. JP/SJ (see Plaintiff's signature); MCA Mot. SJ Ex. G & H (title page of deposition transcripts).

2. The Court previously granted in part and denied in part a motion to dismiss by Sniffen, Kaneshiro, and Fernandez. *See* Order Granting in Part and Denying in Part Defendants Sniffen, Fernandez, and Kaneshiro's Motion to Dismiss (filed Mar. 14, 2000). The complaint was completely dismissed against Fernandez; only state law claims against Sniffen and Kaneshiro in their individual capacities remain. The Court denied a later attempt by Sniffen and Kaneshiro for judgment on the pleadings on these claims. *See* Order Denying Defendants Sniffen and Kaneshiro's Motion for Judgment on the Pleadings (filed June 15, 2000).

and committed various state law torts against him. Plaintiff asserts claims under 42 U.S.C. § 1983 and state law against the Defendants. Six motions are before the Court today.[3]

## BACKGROUND

The following facts are undisputed unless otherwise noted.[4] Plaintiff owned a lumber business in Haiku, Maui named UpCountry Lumber ("UpCountry"), which was the business name of a corporation called Integrity Plus, Inc. Plaintiff was the president of Integrity Plus. MCA filed a complaint against Integrity Plus in state district court in 1996. A trial was held and on November 29, 1996, the state court ordered judgment to be entered for MCA and against Integrity Plus in the amount of $14,909.55. MCA obtained a writ of execution on April 9, 1997. The writ directed the sheriff to levy upon the property of Integrity Plus and, after providing appropriate notice, to sell such property in order to satisfy the judgment.[5]

Plaintiff claims that prior to April 14, 1997 he had reached an agreement with MCA's former counsel, David Jorgensen, that the sheriff and/or MCA would not seize that property from Plaintiff's store which was being sold on consignment and/or already sold and awaiting delivery. See Compl. ¶ 38; MCA CSF ¶ 10.[6] Jorgensen admits that he agreed to this, but only if Plaintiff provided his office with documentation or verification of such status. Jorgensen Aff. ¶ 8, attached to MCA Mot. SJ. Plaintiff states that they agreed "that the Writ would not be executed *until* working out non-seizure of exempt properties on the business premises." Pourny Decl. ¶ 6, attached to Pl.Opp. MCA Mot. SJ ("Pourny MCA Decl.") (emphasis added). Jorgensen claims that Plaintiff never provided any substantiation of his claims of consignment and sales. Plaintiff disputes this, but offers no evidence to the contrary.

MCA hired Viveiros, as an independent contractor, to execute the writ. See Jorgensen Aff. ¶¶ 13, 21. He did so on April 14, 1997. Prior to arriving at UpCountry, Viveiros requested police assistance from Bugado. See Cty Defs. Mot JP/SJ Ex. 8, at 3; Bugado Aff. ¶ 4, attached to Cty Defs. Mot JP/SJ. Bugado accordingly went to UpCountry to stand by while Viveiros executed the writ. See *id.* To minimize the expense of executing the writ, MCA allowed Viveiros to use two MCA trucks and a number of MCA employees[7] to assist in moving and loading the property to be levied upon. See MCA CSF ¶ 7.

Bugado, Viveiros, and the MCA employees arrived at UpCountry at about 2:20 p.m. See Bugado Aff. ¶ 5. According to Bugado, when he arrived

> [Plaintiff] was agitated and yelling that the writ was against God and his reli-

---

**3.** On May 24, 2000, Plaintiff also filed a Motion for Partial Summary Judgment against Viveiros and Bugado. Plaintiff withdrew this motion on July 26, 2000.

**4.** These facts are taken from the concise statements of fact submitted by the parties. Plaintiff moved to strike the exhibits supporting the bulk of these facts. As explained in Part I of the Discussion, the Court DENIES all of Plaintiff's motions to strike. Accordingly, the Court will rely on the proffered exhibits.

**5.** MCA emphasizes the validity of the order, the judgment, and the writ and contends that all it ifs actions were taken against Integrity Plus, and not against Plaintiff. Plaintiff disputes this, and contends that he is suing for

personal losses. See Pourny Decl. ¶ 8, attached to Pl.Opp. MCA Mot. SJ.

**6.** Plaintiff argues that this is the only contract he is alleging was breached and that he is not trying to re-litigate breach of contract claims brought in an earlier action against MCA. See MCA CSF ¶¶ 18–19; Pl. CSF MCA Mot. SJ ¶ 18.

**7.** Plaintiff argues that approximately twelve MCA employees were present (*see* Pl.Opp. MCA Mot. SJ, at 3), but offers no evidentiary support for this statement. MCA brought forth evidence that only eight employees accompanied Viveiros. See Reply MCA Mot. SJ, Ex. 2, at 2 (MCA's Response to Pl.2d Request for Answers to Interrogatories).

gion, and he would not allow them to remove any lumber. [I] requested [Plaintiff] several times to calm down and comply. [Plaintiff] continued to move around his business, and would not heed [my] requests to calm down.

*Id.* ¶¶ 6–7. Plaintiff denies that he was yelling, but says "[w]hen [Bugado] asked me to stop yelling, I did quiet down." *See* Pourny Decl. ¶¶ 2 & 6, attached to Cty Defs.Mot. JP/SJ ("Pourny Cty Defs. Decl."). He also denies that he was agitated. *See id.* ¶ 5. He claims that he was "concerned about what properties were being seized" and "was trying to inform them of properties on the business premise that were there on consignment and owned by customers, exempt, and personal." *Id.* ¶¶ 2 & 5. He admits that he was walking around the premises while he tried to explain the status of various property. *Id.* 3. Plaintiff states that "I was cooperative." *Id.* ¶ 6. He also states that, "Bugado would tell me to stay put. I believed his request was unreasonable because I was not under arrest and within my own business establishment." *Id.* Bugado asserts that a crowd began to gather outside the business and that he warned Plaintiff that he would be arrested if he did not calm down. *See* Bugado Aff. ¶ 8. Plaintiff contends that the gathering crowd was merely the MCA employees. *See* Pourny Cty Defs.Decl. ¶ 4. Bugado states that,

[Plaintiff] continued to move around his business, whereupon [I] became concerned over the safety of others present, as well as [myself], and placed [Plaintiff] under arrest at approximately 2:46 p.m.

Bugado Aff. ¶ 9. Plaintiff was arrested for disorderly conduct under H.R.S. § 711–1101.[8] Bugado states that Plaintiff "would not comply with requests ... to come to the patrol car, instead [Plaintiff] refused to walk, kicking and refusing to cooperate. [I] ended up having to carry [Plaintiff] with the assistance of Deputy Sheriff Viveiros to the patrol car." *Id.* ¶¶ 10–11. Bugado insists that Plaintiff was not placed in a choke hold, "nor grabbed by the chain of his handcuffs by either [himself] or Viveiros." *Id.* ¶ 12. Plaintiff denies this version of events, stating that Viveiros and Bugado "grabbed and handcuffed me behind my back." Pourny MCA Decl. ¶ 9. He further asserts that "I was not kicking nor did I refuse to walk. After Viveiros placed me in the choke hold, I was physically unable to do anything." Pourny Cty Defs.Decl. ¶ 7.[9] The choke hold allegedly rendered Plaintiff unconscious; when he regained consciousness, "Viveiros and Bugado were dragging me across the floor of my business and out the front door, where I was lifted into the air and

8. H.R.S. § 711–1101 states in relevant part:
(1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
(a) Engages in fighting or threatening, or in violent or tumultuous behavior; or
(b) Makes unreasonable noise; or
(c) Makes any offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provoke a violent response; or
(d) Creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; or
(e) Impedes or obstructs, for the purpose of begging or soliciting alms, any person in any public place or in any place open to the public.

(2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to the person, including the nature of the location and the time of the day or night, the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

9. Plaintiff makes the factually unsupported claim in his CSF opposing County Defendants' motion that Bugado assisted Viveiros in the choke hold. Indeed, in his declaration attached to his opposition to MCA's motion, he states "Viveiros applied a choke-hold rendering me unconscious." Pourny MCA Decl. ¶ 9.

tossed [10] head first into the police car's backseat." Pourny MCA Decl. ¶ 9.

Plaintiff does not dispute that when the MCA employees arrived at UpCountry, none of them did anything other than assist in identifying and carrying property subject to the writ out of UpCountry and onto the trucks. See MCA CSF ¶ 8. According to MCA, no MCA employees had any physical contact with Plaintiff whatsoever and no employee in any way gave instructions to Viveiros or Bugado regarding how they should treat Plaintiff. See id. ¶ 9. Plaintiff disputes this, but offers no evidence to the contrary; he merely restates the fact that MCA employees helped Viveiros identify, carry, and load property and that at MCA's direction properties exempt from the writ were taken. See Pourny MCA Decl. ¶¶ 3, 4; Myron Nakamura Aff. ¶ 2, attached to MCA Mot. SJ. According to Plaintiff, while the MCA employees seized property from him, Myron Miyake, the son of MCA's owner, asked him "in a mocking and malicious voice … how I liked the way his father put the competition out of business." Pourny MCA Decl. ¶ 7. Plaintiff avers that MCA employees took his personal carpentry tools. See Pourny MCA Decl. ¶ 3.

Plaintiff was transported to the police station by Bugado where he was processed and photographed. Plaintiff was released at 4:17 p.m., at which time he returned to his business to watch the continued levying of his property.[11] See Cty Defs.Mot. JP/SJ Ex. 8, 9, & 19.

MCA maintains that it subsequently provided an inventory of seized property to Plaintiff. See Jorgensen Aff. ¶ 15; MCA Mot. SJ Ex. D. Plaintiff disputes this, and alleges that he did not receive an inventory until he was deposed in this case. See Pourny Cty Defs.Decl. ¶ 9. Shortly following the execution of the writ,

Integrity Plus filed for Chapter 11 bankruptcy. The bankruptcy trustee instructed MCA to return all of the seized property. MCA contends that it fully complied with this instruction and all seized property was returned to Integrity Plus. See David Miyake Aff. ¶ 3–5, attached to MCA Mot. SJ; see also MCA Mot. SJ Ex. F (Stip. for Turnover of Assets) (stating that MCA and Plaintiff's bankruptcy counsel agreed that all seized properties would be returned). Plaintiff disputes this, claiming that he did not receive back all of the seized property. See Pourny Cty Defs. Decl. ¶ 10. Eventually, the bankruptcy case was converted into a Chapter 7 liquidation and the debt owed by Plaintiff was canceled. MCA never recovered the debt owed to it by Plaintiff. See MCA CSF ¶ 16.

As a result of the taking of his personal property, Plaintiff suffered personal humiliation, emotional upset, and depression. He contemplated suicide. See Pourny MCA Decl. ¶ 10; Pourny Cty Defs.Decl. ¶ 8. Plaintiff did not seek medical attention until April 22, 1997. See Cty Defs. CSF ¶ 20. His complaints to his doctor also included pain in his right arm, and his doctor found evidence of spinal disc disease. See Pourny Cty Defs.Decl. ¶ 9; Cty Defs.Mot. JP/SJ Ex. 11.

The Maui Police Department is a nationally accredited law enforcement agency. It has appropriate specific general orders regarding arrests and the use of force. Recruits to the MPD receive intensive training and continuing education which are requirements to remaining employed as an officer. Bugado successfully completed all of his recruit training and his recall training. Finally, Phillips did not become Chief of Police until August 25, 1998. See Cty Defs. CSF ¶¶ 22–27.

On May 24, 2000, MCA filed a motion for summary judgment ("MCA Mot. SJ"),

---

10. Bugado is 5′9″. Plaintiff is 6′6″. Cty Defs. CSF ¶¶ 14–15.

11. Plaintiff asserts that "more than $50,000.00 worth of property was seized, including thousands of dollars of exempt property under [H.R.S.] § 651–121." Pl.Opp. MCA Mot. SJ, at 3. He offers no evidentiary support for this statement.

along with a concise statement of facts. MCA filed a supplemental memorandum in support of its motion for summary judgment on July 12, 2000. Plaintiff filed an opposition and a concise statement of facts on July 13, 2000. On July 20, 2000, MCA filed a reply.

Also on May 24, 2000, County Defendants moved for judgment on the pleadings or, in the alternative, for summary judgment ("County Defs.Mot. JP/SJ"). They filed a concise statement of facts on this date as well. Plaintiff filed his opposition and an accompanying concise statement of facts on July 13, 2000. County Defendants filed an untimely reply on July 21, 2000.

On July 17, 2000, Plaintiff filed two motions to strike. In the first, he sought to strike seven of the eight exhibits supporting MCA's motion for summary judgment. In the second, he sought to strike nine of the twenty exhibits supporting County Defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment. On July 20, 2000, MCA filed its second supplemental memorandum in support of its motion for summary judgment and an opposition to the motion to strike its exhibits. On July 21, 2000, County Defendants filed a supplemental memorandum in support of their motion and an opposition to the motion to strike their exhibits. On July 25, 2000, Plaintiff filed two additional motions to strike. First, he asked the Court to strike MCA's second supplemental memorandum in support of its motion for summary judgment. Second, he asked the Court to strike County Defendants' supplemental memorandum. MCA filed an opposition to this second motion to strike on July 27, 2000.

A hearing was held on all the motions on July 31, 2000.

### STANDARD OF REVIEW

#### I. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows parties to move for "judgment on the pleadings."

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *See Honey,* 195 F.3d at 532. A district court will render a judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *See Enron Oil Trading & Transp. Co. v. Walbrook Insurance Co.,* 132 F.3d 526, 529 (9th Cir.1997). Judgment may only be granted when the pleadings show that it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See id.*

#### II. Summary Judgment

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element es-

sential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

### I. PLAINTIFF'S MOTIONS TO STRIKE

Plaintiff moved to strike certain exhibits supporting MCA's motion for summary judgment and selected exhibits supporting County Defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment. Federal Rule of Civil Procedure 56(e) requires in relevant part that when filing a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R.Civ.P. 56(e). The Court finds that MCA and County Defendants filed sufficient affidavits to support their exhibits. All of the objected to exhibits by MCA are certified copies of public records and documents (Ex. A, B, C, & F) and/or supported by affidavits by a person attesting to have knowledge that the exhibit is what it is claimed to be (Ex. A, B, C, D, E, F, & G). These exhibits are sufficiently authenticated to be admissible at trial. *See Fed. R.Evid.* 901(b). Similarly, all of the objected to exhibits by County Defendants are certified copies of public records and

documents (Ex. 2, 16, & 18) and/or supported by affidavits of a one or more persons attesting to have personal knowledge that the exhibit is what it is claimed to be (Ex. 1, 2, 3, 8, 9, 11, 16, 17, & 18). Plaintiff's motions to strike these exhibits are DENIED.

█ Plaintiff also seeks to strike MCA's second supplemental memorandum in support of its motion for summary judgment, and County Defendant's supplemental memorandum in support of their motion. Rule 56(e) states that, "The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." The Court will permit supplementation in the instant case, despite Defendants' failure to seek leave of Court. There is no prejudice to Plaintiff from this supplementation because it did not add any new exhibits—it merely buttressed the authentication of exhibits previously submitted. Additionally, Plaintiff's contention that the County Defendants' exhibits are not sufficiently authenticated by persons with personal knowledge simply because those people are not records custodians is meritless. Rule 56(e) only requires "personal knowledge," not a specific job title. Plaintiff's motions to strike supplemental memorandums are DENIED.[12]

## II. COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

As a preliminary matter, the Court GRANTS summary judgment on all claims in favor of Phillips, in both his official and his individual capacities. Plaintiff conceded that this outcome is appropriate. *See* Pl.Opp.Cty Defs.Mot. JP/SJ, at 5. The Court will continue to refer to MPD and Bugado collectively as "County Defendants."

### A. Constitutional Claims

In the Complaint, Plaintiff alleges that County Defendants "deprived Plaintiff of protections under the First, Fourth, and Fourteenth Amendments and the taking clause of the United States." Compl. ¶ 49. It appears from Plaintiff's opposition to the motion by County Defendants, however, that Plaintiff is only pursuing three constitutional theories against County Defendants: unlawful arrest, excessive force, and municipal liability.

42 U.S.C. § 1983 provides, in part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a cause of action under § 1983, a plaintiff must show (1) that a person acting under color of state law en-

---

**12.** Upon examining Plaintiff's own motions, the Court finds it surprising that Plaintiff brought these motions to strike. It appears that under Plaintiff's logic his own exhibits should all be stricken. Plaintiff's counsel is the only person who "swear[s] and attest[s]" that the exhibits he attaches to his motions are indeed what he purports them to be. *See* Decl. of Richard Gronna ¶¶ 2–5 attached to Pl.Opp.Cty Defs.Mot. JP/SJ (attesting that certain exhibits are true excerpts of depositions and copies of a H.R.S. section); Decl. of Richard Gronna ¶ 2 attached to Pl.Opp. MCA Mot. SJ (attesting that an exhibit is a true and correct excerpt of a deposition); Decl. of Richard Gronna ¶ 2 attached to Pl.Mot.Part. SJ (attesting that an exhibit is a true and correct copy of the April 3, 1997 writ of execution) (this exhibit is *identical* to County Defendants' Exhibit 16 and MCA's Exhibit C, both of which Plaintiff seeks to have stricken); Decl. of Richard Gronna ¶¶ 2–5 attached to Reply Pl.Mot.Part. SJ (attesting that certain exhibits are true copies of a H.R.S. section, true excerpts from deposition transcripts, and a true and correct copy of Plaintiff's disclosed expert witness report).

gaged in the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the constitution or laws of the United States. *See Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir.1988). It is not disputed that County Defendants acted under color of state law. A person deprives another of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains. *See id.* at 633.

The Supreme Court has expressly stated that § 1983 "imposes liability for violations of rights protected by the Constitution, not for duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Finally, "a plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998).

### 1. Unlawful Arrest

Plaintiff accuses Bugado of unlawful arrest (also called false arrest). Under the Fourth Amendment, "[p]olice may arrest a person without a warrant if the arrest is supported by probable cause." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir.1999).[13] A claim for false arrest under the Fourth Amendment and 42 U.S.C. § 1983 requires a person to demonstrate that there was no probable cause to arrest him. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir.1998). "Probable cause exists when, under the totality of the circumstances known to the

arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *See Buckner*, 179 F.3d at 837 (changes in original).

### a. Qualified Immunity of Officer Bugado

▪ In § 1983 actions, qualified immunity protects government officials performing discretionary functions where their conduct is objectively reasonable. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Law enforcement officials sued under § 1983 are entitled to qualified immunity if (1) the "right" they allegedly violated was not "clearly established" at the time of the violation, or (2) if a reasonable officer would have thought that the defendants' actions were constitutional. *See Palmer v. Sanderson*, 9 F.3d 1433, 1435 (9th Cir.1993) (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

▪ The Fourth Amendment right to be free from arrests without probable cause is clearly established. *Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 706 (9th Cir.1989). Accordingly, a law enforcement officer is only entitled to qualified immunity if a reasonable officer would reasonably believe the arresting officer had probable cause to make an arrest. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442–43 (9th Cir.1991). The qualified immunity inquiry focuses on the "facts and circumstances actually known to the officer" at the time of arrest. *Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 462 (9th Cir.1994). It is a ques-

---

**13.** False arrest claims are properly made under the Fourth Amendment, not the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

tion of fact *what* facts and circumstances were actually known to the officer; if a genuine dispute exists between the parties on this issue, the question must go to the factfinder. *See Act Up*, 988 F.2d at 873.

In performing qualified immunity analysis, the Court must decide not whether probable cause existed, but whether a reasonable officer in Bugado's position would have believed that there was probable cause to arrest Plaintiff. *See Fuller*, 950 F.2d at 1443 ("[E]ven if the officers were mistaken that probable cause to arrest the Fullers existed, they are nonetheless immune from liability if their mistake was reasonable."). Thus, Bugado is shielded from a suit for damages for false arrest if a reasonable officer in his position could have believed the arrest to be lawful in light of clearly established law. *See Act Up*, 988 F.2d at 871.

Under H.R.S. § 711–1101, disorderly conduct may include recklessly creating a risk of physical inconvenience or alarm to members of the public by "engag[ing] in ... tumultuous behavior" or making "unreasonable noise." "Unreasonable noise" includes "the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced." H.R.S. § 711–1101(2). In the instant case, Bugado submitted affidavits stating that Plaintiff was agitated and yelling and would not heed Bugado's several requests to calm down over a 26 minute period. Plaintiff denies yelling, but states that he quieted down when Bugado asked him to do so. Plaintiff admits, however, that he did not heed the officer's commands to stop walking around because he thought the request was unreasonable. Plaintiff agrees that he continued to walk around the lumber store trying to explain the status of different property. Bugado says that a crowd began to gather; Plaintiff contends the "crowd" was merely the MCA employees.

■ "The minimum evidence necessary to prove Disorderly Conduct/Unreasonable Noise as a violation is that the defendant (1) failed to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced and (2) thereby recklessly created a risk of causing a member of the public to be physically inconvenienced or alarmed." *State v. Najibi*, 78 Hawai'i 282, 892 P.2d 475, 478–79 (App.1995). Construing the facts most favorably to Plaintiff, he quieted down after Bugado asked him to stop yelling. Thus, Plaintiff would not have been making "unreasonable noise" because he did "heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced." *See* H.R.S. § 711–1101. Accordingly, following *Najibi*, a reasonable officer arresting Plaintiff in 1997 would not have believed he had probable cause to arrest Plaintiff for disorderly conduct based on unreasonable noise. It follows that unless Plaintiff exhibited some other behavior prohibited under the disorderly conduct statute, a reasonable officer would not have believed he had probable cause to arrest him. The only other behavior Bugado observed (according to Plaintiff's version of events) is that while a crowd of people (consisting solely of MCA employees) watched, Plaintiff was walking around inside his own store trying to stop people from taking improper items while executing a civil writ and would not sit still for Bugado. A charge of disorderly conduct requires that a person, either recklessly or with the intent of doing so, causes physical inconvenience or alarm to a member of the public by doing various actions, such as "tumultuous behavior." *See* H.R.S. § 711–1101. Under Plaintiff's version of the facts, the Court cannot find that a reasonable officer in Bugado's position could have believed that there was probable cause to arrest Plaintiff for disorderly conduct. Accordingly, the Court cannot find that Bugado is protected by qualified immunity at this stage. The Court notes, however, that a defense of qualified immunity is still possible, but only after the facts of how Plaintiff was truly acting have been determined at trial.

County Defendants' motion for summary judgment based on the qualified immunity of Bugado is DENIED.

### b. Summary Judgment is Not Appropriate on the Merits of the Unlawful Arrest Claim

The Court also finds that there are questions of material fact precluding summary judgment on the issue of whether, on the merits, Bugado had probable cause to arrest Plaintiff. Summary judgment is DENIED.

### 2. Excessive Force

■ All claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its reasonableness standard. *See Katz v. United States*, 194 F.3d 962, 967 (9th Cir.1999). This reasonableness inquiry is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him. *See id.* (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The essence of the reasonableness inquiry is a balancing of the "force which was applied ... against the need for that force." *Id.* (citing *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir.1997)). In evaluating whether the force used to effect a particular arrest is reasonable, a court must pay careful attention to the following non-exhaustive list of factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape." *Id.* at 968.

### a. Qualified Immunity

Bugado also asserts qualified immunity as a defense to the excessive force claim. The Fourth Amendment prohibition on the use of excessive force in the course of an arrest is a clearly established right. *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989). Thus, the question is whether a reasonable officer would have believed that Bugado's conduct in arresting Plaintiff was constitutional. *See Palmer*, 9 F.3d at 1435.

The Ninth Circuit recently found in *Katz* that summary judgment was inappropriate on an excessive force claim despite the defendants' assertion of qualified immunity. *See* 194 F.3d at 970. In *Katz*, the facts, taken most favorably to the plaintiff, were that without warning he was approached from behind, the banner he wished to display at a rally was grabbed, he was dragged fifty feet, and then tossed into the back of a van so violently that he narrowly avoided serious injury. *See id.* The Ninth Circuit held that "no reasonable officer could have believed that the alleged amount of force used to arrest Katz was necessary under the circumstances." *Id.* The Court applied the three factor test from *Liston*: "Unfurling a banner at a public event does not appear to be a particularly severe crime. Katz was sixty years old and wearing a leg brace. There is no indication that he was armed or dangerous. From all that appears at this stage of the case, he did not pose an immediate threat to the safety of the officers or anyone else." *Id.*

■ Construing all the evidence in the light most favorable to Plaintiff, the force Plaintiff avers Bugado used upon him was that Bugado "grabbed and handcuffed me behind my back" and that Bugado (with Viveiros) dragged Plaintiff across the floor, out the door of UpCountry, and then "tossed" him into the police vehicle.[14] Plaintiff contends that he would have walked and was not uncooperative. The Court finds that a reasonable officer would have believed Bugado's conduct in handcuffing Plaintiff was reasonable. It can hardly be excessive force to handcuff an

---

14. There is no factually supported allegation of Bugado using a choke-hold maneuver on Plaintiff, or even assisting Viveiros in his alleged choke-hold.

arrestee. Plaintiff does not bring forth facts that the handcuffing was done roughly. *Compare Hansen*, 885 F.2d at 645 (improper to grant summary judgement on a claim of excessive force where the plaintiff alleged handcuffs were put on in an abusive manner and that she was physically injured therefrom). However, the Court cannot say that a reasonable officer would have believed that Bugado's conduct in dragging and tossing Plaintiff was constitutional and not a use of excessive force. Although the facts in *Katz* are certainly more egregious (sixty year old man with a leg brace dragged and tossed for unfurling a banner), there are similarities to the instant case. Here, too Plaintiff's crime was not all that serious—it is at best a petty misdemeanor. *See* H.R.S. § 711–1101(3). The actions Plaintiff complains of were taken after he was handcuffed and no longer a threat to the officers or others. Moreover, there are questions of fact about whether Plaintiff was cooperative or not, i.e., whether carrying/dragging/tossing was really necessary to get Plaintiff into the police cruiser. Because there are material issues of fact and the Court cannot say as a matter of law that a reasonable officer would have believed that Bugado's conduct in arresting Plaintiffs was constitutional, a finding of qualified immunity is inappropriate.

### b. Summary Judgement is Not Appropriate on the Merits of the Excessive Force Claim

The Ninth Circuit explained in *Katz*:

Both the second prong of the qualified immunity defense (whether a reasonable officer could have believed his conduct was lawful), and the merits of an excessive force claim focus on the objective reasonableness of the officer's conduct. To determine whether an officer is entitled to the defense of qualified immunity when the use of force is in issue, the question asked is whether a hypothetical officer reasonably could have believed that the amount of force used was reasonable. To resolve the merits of an excessive force claim, the question is whether a reasonable officer could have believed that the force used was necessary under the circumstances. Because of this parity, we have repeatedly held that "the inquiry as to whether officers are entitled to qualified immunity for the use of excessive force is the same as the inquiry on the merits of the excessive force claim." *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir.1995).

*Katz*, 194 F.3d at 968. Following *Katz*, for the same reasons the Court cannot say as a matter of law that Bugado is entitled to qualified immunity, it cannot say as a matter of law that Bugado did not use excessive force. County Defendants' motion for summary judgment on this issue is DENIED.

### 3. Municipal Liability

Plaintiff's claim against the MPD/County of Maui appears to be that it had a department regulation, custom, or practice of tolerating excessive force and unlawful arrests by its officers.

"Respondeat superior or vicarious liability will not attach under § 1983." *Tokuhama v. City & County of Honolulu*, 751 F.Supp. 1385, 1394 (D.Haw.1989) (Kay, J.) (citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Accordingly, the MPD and/or the County of Maui will not be liable for Bugado's actions simply because he was an employee at the time of the incidents alleged herein. The Supreme Court has held, however, that a municipality is subject to damages liability under § 1983 where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court made clear that the municipality itself must cause the constitutional deprivation. *Id.; accord City of Canton*, 489 U.S. at

385, 109 S.Ct. 1197 (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

A § 1983 plaintiff may establish municipal liability in one of three ways.

First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir.1992) (citations omitted). Plaintiff has not suggested nor set forth facts that the individual who (allegedly) committed the constitutional tort (Bugado) was an official with "final policy-making authority," or that an official with final policy-making authority ratified Bugado's allegedly unconstitutional decision or action and the basis for it. Accordingly, Plaintiff may only avoid summary judgment if he shows that his case fits into the first category, i.e., if he proves that Bugado committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. *See id.*

In the instant case, Plaintiff argues that municipal liability exists because "Bugado testified the arrest of Plaintiff was pursuant to police department procedure and training. That the noise Plaintiff made coupled with the gathering of a crowd were police department police sufficient for probable cause." Pl.Opp.Cty Defs. Mot. JP/SJ, at 8 (word choice in original). Even if the Court assumes that Plaintiff was arrested without probable cause or unreasonably dragged and "tossed," Plaintiff utterly fails bring forth facts that it is "formal governmental policy" or a "standard operating procedure" to arrest without probable cause or to drag and toss arrestees. A party facing summary judgment is obliged to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. Plaintiff has not done so—the excerpt of the Bugado deposition which he submitted does not, as he alleges, state that "the arrest and physical handling of Plaintiff were conducted pursuant to police department procedure an his training." Pl.Opp.Cty Defs.Mot. JP/SJ, at 3. All that the deposition (exhibit 3 to Plaintiff's opposition brief) makes clear is that Bugado wrote his report pursuant to how he was trained and that he had training which helped him identify disorderly conduct. *See* Pl.Opp.Cty Defs.Mot. JP/SJ, Ex. 3, at 22–23. Plaintiff's claim that there is a custom or policy of excessive force is factually unsupported and summary judgment is GRANTED.

Finally, Plaintiff appears to also assert a claim of inadequate training and failure to supervise in his complaint. *See* Compl. ¶¶ 50, 56. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197. County Defendants put forth evidence that Bugado has successfully completed all required training and that the MPD is a nationally accredited police force. In contrast, Plaintiff does not allege any facts whatsoever to support this theory of inadequate training of Bugado. Accordingly, to the extent

Plaintiff asserted a claim for municipal liability based on a failure to train, it is factually unsupported. The Court GRANTS summary judgment to County Defendants on this issue.

## B. State Tort Claims

### 1. MPD's Respondeat Superior Liability for Bugado's Actions

 Plaintiff asserts various state tort claims against both Bugado and the MPD. The MPD can be held liable for Bugado's tortious actions via respondeat superior. *See,* 751 F.Supp. at 1394 (allowing respondeat superior liability for intentional torts of malicious prosecution and false arrest); *Wong–Leong v. Hawaiian Indep. Refinery, Inc.,* 76 Hawai'i 433, 879 P.2d 538, 544 (1994) ("Under the theory of respondeat superior, an employer may be liable for the negligent acts of its employees that occur within the scope of their employment."); *Orso v. City & County of Honolulu,* 56 Haw. 241, 534 P.2d 489, 494 (1975) (holding that City and County could be "liable for the tortious conduct of the prosecuting attorney under the doctrine of respondeat superior" when the intentional torts of defamation, false arrest, false imprisonment and malicious prosecution were alleged).

County Defendants' legal argument that there is no respondeat superior liability for intentional torts is flawed in light of *Orso* and *Tokuhama.* They also attack Plaintiff on the facts. County Defendants state in their reply brief, "Plaintiff also fails to address why *respondeat superior* applies, or facts supporting such a finding. Plaintiff has not even presented evidence that Officer Bugado was on duty at the time." Reply Cty Defs.Mot. JP/SJ, at 8 (emphasis in original). County Defendants did not identify for the Court any materials on file which demonstrate Bugado was not on duty at the time of his arrest of Plaintiff, hence they have not triggered a duty on behalf of Plaintiff to show there are facts for trial on the issue of respondeat superior. *See T.W. Elec. Serv.,* 809 F.2d at 630.

Moreover, there does not appear to be a dispute that Bugado was employed by MPD at the time. Additionally, unless County Defendants are arguing that Bugado drives a police cruiser and carries handcuffs when not on duty, the exhibits and affidavits before the Court suggest Bugado was indeed on duty at the time of the events in question. *See* Pourny MCA Decl. ¶ 9. In short, County Defendants do not show that they are entitled to summary judgment on the issue of respondeat superior liability and accordingly, summary judgment on this issue is DENIED.

### 2. Negligence

 Plaintiff alleged in the complaint that Bugado "had a duty and obligation to perform [his] employment and conduct [himself] and execute laws and regulation in a lawful and reasonable manner" and that he breached this duty when he "unlawfully arrested, detained, seized property, served process, used unauthorized or untrained employees of MCA to execute a court writ, and/or used excessive force against Plaintiff." Compl. ¶ 58. To make out a claim for negligence under Hawaii law, Plaintiff has the burden of proving, "(1) [Bugado had a] duty to conform to a certain standard of conduct, (2) breach of the duty, (3) causal connection between the breach and the injury, and (4) damage to [Plaintiff]." *Nielsen v. American Honda Motor Co.,* 92 Hawai'i 180, 989 P.2d 264, 274 (App.1999). "A negligence action lies only when the defendant owes a duty to the plaintiff." *Hao v. Campbell Estate,* 76 Hawai'i 77, 869 P.2d 216, 219 (1994). Whether the law imposes a duty of care on a relationship is a question of law; determination of the underlying factual questions, however, is the job of the fact finder. *See id.* at 221.

 In opposition to County Defendants' motion for summary judgment on this issue, Plaintiff avers that "Bugado had a legal duty to not arrest Plaintiff in the absence of probable cause." Pl.Opp.Cty

Defs. Mot. JP/SJ, at 8. Plaintiff's negligence claim fails as a matter of law. There is no "duty" to not arrest without probable cause. There is an intentional tort for arrest without probable cause called "false arrest" which Plaintiff does not allege. *See Reed v. City & County of Honolulu,* 76 Hawai'i 219, 873 P.2d 98, 109 (1994). Plaintiff cannot sue under negligence for false arrest. Accordingly, the Court GRANTS the motion for summary judgment on this issue as to Bugado. The Court also GRANTS the motion for summary judgment as to the MPD—there can be no respondeat superior liability when the employee did not perform a tortious act.

### 3. Abuse of Process

■ To establish a claim of abuse of process, Plaintiff must show (1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding. *See Wong v. Panis,* 7 Haw.App. 414, 772 P.2d 695, 699–700 (1989). An improper ulterior motive must be the primary reason for suit. *See id.* at 700 (holding that claims asserted for the purpose of promoting settlement between parties was neither an improper nor ulterior motive).

Plaintiff has not brought forth any facts supporting this claim against Bugado. Accordingly, summary judgment for County Defendants is GRANTED.

### 4. Conversion

■ The Supreme Court of the Territory of Hawaii explained conversion as:

Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession permanently or for an indefinite time.

*Tsuru v. Bayer,* 25 Haw. 693, 1920 WL 830, at *2 (1920). The Court enumerated the elements of a conversion claim as, "(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." *Id.* The Restatement of Torts defines conversion similarly. *See* Restatement (Second) of Torts § 222A (1965). Factors determining the seriousness of the interference and "the justice" of requiring the tortfeasor to pay full value include the extent and duration of actor's dominion and resulting interference with the other's right of control, his intent to assert a right in fact, his good faith, harm done to chattel, and inconvenience and expense caused to the other. *See id.*

In the instant case, Plaintiff has not asserted any facts whereby Bugado took chattel from Plaintiff without his consent, that he assumed ownership of any chattel, that he illegally used or abused chattel, or that he wrongfully detained chattel. *See Tsuru,* 25 Haw. 693, 1920 WL 830, at *2. This claim is meritless and summary judgment for both County Defendants is GRANTED.

### 5. Breach of Contract

Plaintiff does not set forth any facts showing the existence of a contract between himself and any of County Defendants, nor that this non-existent contract was breached. The Court GRANTS County Defendants' motion for summary judgment on this claim.

### 6. Assault and Battery

■ "Battery is an unlawful touching of another person without his [or her] consent." *Ozaki v. Association of Apartment Owners,* 87 Hawai'i 273, 954 P.2d 652, 668 (App.1998), *aff'd in part, rev'd in part on other grounds* 87 Hawai'i 265, 954 P.2d 644 (1998). A police officer is entitled to use such force as is justifiable when making an arrest (thereby making such justifiable touching not "unlawful"). *See,*

*e.g.,* H.R.S. § 703–307(1) ("the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest"). Plaintiff has put forth facts raising a triable issue that Bugado used excessive force on him when he dragged Plaintiff across his store and tossed him into the police car. *See* Part II.A.2, *supra.* If it is found that excessive force was used, then it necessarily follows that Plaintiff was the victim of an unlawful, unconsented-to touching by Bugado. Accordingly, summary judgment in favor of Bugado on this claim is DENIED. Because it is denied against Bugado, summary judgment is also DENIED as to the MPD under respondeat superior.

■ The Restatement of Torts defines "assault" as an act, other than the mere speaking of words, which directly or indirectly is a legal cause of putting another in apprehension of an immediate and harmful or offensive contact. *See* Restatement (Second) of Torts § 21(1) (1965). The actor must intend to inflict a harmful or offensive contact or cause the apprehension. *See id.* Plaintiff's claim must fail for lack of factual support. Even if Bugado's intent is inferred from his actions, Plaintiff has not set forth any facts that he was ever in apprehension of an immediate and harmful or offensive contact with Bugado. Moreover, taking Plaintiff's facts as true, Viveiros made him unconscious before Bugado and Viveiros started to drag him across the floor. It is impossible for someone unconscious to be in apprehension of an immediate and harmful or offensive contact. Plaintiff has not set forth sufficient facts to meet his burden at trial on the claim of assault and accordingly, summary judgment on this issue is GRANTED as to both Bugado and the MPD.

### 7. Intentional and/or Negligent Infliction of Emotional Distress

County Defendants also seek judgment on the pleadings or summary judgment on Plaintiff's intentional and/or negligent infliction of emotional distress claim. Hawaii recognizes the torts of intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED). *See generally Dunlea v. Dappen,* 83 Hawai'i 28, 924 P.2d 196, 206 & n. 11 (1996).

■ The elements of IIED are: "(1) that the act allegedly causing the harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness." *Id.* at 206 (citing *Marshall v. University of Haw.,* 9 Haw.App. 21, 821 P.2d 937, 947 (1991)). Recovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were "unreasonable." *See id.* An act is "unreasonable" if it is "without just cause or excuse and beyond all bounds of decency." *Id.* In other words, the act complained of must be "outrageous," as that term is employed in the Restatement of Torts. *See id.* "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts § 46 cmt. d. "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Dunlea,* 924 P.2d at 206 (quotations omitted). Moreover, "[t]he question of whether a defendant should have recognized that his act was likely to cause illness is a jury question." *Marshall,* 821 P.2d at 947.

■ NIED can be found when "a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 944 P.2d 1279,

1303 (1997). This mental stress must be a "reasonably foreseeable consequence of the defendant's act." *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509, 521 (1970).

In the instant case, taking all Plaintiff said as true, Bugado told him to stop yelling, to sit still, arrested him, dragged him across the floor, and tossed him into a police car because he protested the wrongful taking of various pieces of property. Plaintiff stated in his declaration that he was emotionally distressed from the incident—he claims depression and that he contemplated suicide. The Court finds that Plaintiff has alleged sufficient facts to meet his burden under both IIED and NIED. There is evidence from which a reasonable factfinder could conclude that Bugado's actions were intentionally done, were unreasonable, and that Bugado should have recognized that his actions were likely to result in emotional distress. Moreover, whether Bugado's actions were unreasonable and whether Bugado should have recognized that his actions were likely to result in illness are questions of material fact which preclude summary judgment. Accordingly, the Court DENIES County Defendants' motion for summary judgment on Plaintiff's claim of IIED. Similarly, the Court DENIES County Defendants' motion for summary judgment on Plaintiff's claim for NIED. Whether a reasonable man would be unable to adequately cope with Bugado's actions and whether Plaintiff's depression and suicidal thoughts were a reasonably foreseeable consequence of the Bugado's actions are questions of material fact. Summary judgment for County Defendants is inappropriate.

**15.** The Complaint alleges that MCA, among others, "under color of law, acted intentionally, recklessly, wantonly, with malice, and with deliberate indifference to Plaintiff's property interests and due process of law when they seized property from Plaintiff's business without inventorying and/or providing Plaintiff an inventory of the property seized." *Id.* ¶ 53.

## III. MCA'S MOTION FOR SUMMARY JUDGMENT

### A. Constitutional Claims

As stated above, to state a cause of action under § 1983, a plaintiff must show (1) that a person acting under color of state law engaged in the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the constitution or laws of the United States. *See Leer,* 844 F.2d at 632. The right that Plaintiff appears to claim MCA violated is his right to not have his property taken without due process of law. *See* Compl. ¶ 53.[15] To prevail on a § 1983 claim based on a violation of procedural due process, a plaintiff must establish (1) a liberty or property interest protected by the constitution, (2) a deprivation of that interest by the government, and (3) the lack of process. *See Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir.1993). MCA denies that it acted under color of state law. It does not, however, move for summary judgment on the merits of Plaintiff's due process claim.[16] Accordingly, at this time the Court will only analyze whether MCA acted under color of state law.

### 1. The *Lugar* Test for State Action

Individuals and private entities are not normally liable for violations of most rights secured by the United States Constitution. *See Morse v. North Coast Opportunities, Inc.,* 118 F.3d 1338, 1340 (9th Cir.1997) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). When addressing whether a private party acted under color of law, a court should start with the presumption that private conduct does not constitute government action. *See Sutton*

**16.** MCA only argues the merits of a § 1983 municipal liability claim; however, MCA is not a municipality and accordingly, that test is not relevant to its liability.

v. *Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.1999). In order to maintain a cause of action based on an allegation of constitutional violations, a plaintiff must show that the actions complained of are "fairly attributable" to the government. *See Morse*, 118 F.3d at 1340. *Lugar* set forth a two-part test for this determination:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir.1989) (citing *Lugar*, 457 U.S. at 936, 102 S.Ct. 2744). "Both elements under *Lugar* must be met for there to be state action." *Id.* The *Lugar* Court noted, "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." 457 U.S. at 936, 102 S.Ct. 2744.

*Lugar* was a case where a creditor moved under a Virginia prejudgment attachment statute to have some of its debtor's property attached. The debtor sued the creditor, claiming that in attaching his property, the creditor had acted jointly with the state to deprive him of his property. *See Lugar*, 457 U.S. at 925, 102 S.Ct. 2744. After setting forth the two-prong test discussed above, the Court then turned to the debtor's claims. The Court found that no state action was possible under the claim that the deprivation of property resulted from the creditor's malicious, wanton, willful, oppressive, and unlawful acts. The Court held that "[C]onduct of which [the debtor] complained

could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State." *Id.* at 940, 102 S.Ct. 2744. In his second claim, however, the debtor challenged the state statute as procedurally defective under the Fourteenth Amendment. The Court held that, "While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action." *Id.* at 941, 102 S.Ct. 2744. The Court then held that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." In other words, while the first claim failed the first prong of the "fairly attributable" test, the second claim satisfied both prongs. The Court then reiterated that the debtor had not presented a valid § 1983 claim "insofar as he alleged only misuse or abuse of the statute." *Id.* at 942, 102 S.Ct. 2744; *see also Wyatt v. Cole*, 504 U.S. 158, 161–62, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (explaining *Lugar* as holding that "private parties who attached a debtor's assets pursuant to a state attachment statute were subject to § 1983 liability *if the statute was constitutionally infirm* ") (emphasis added).

The instant case is similar to the first, failed claim in *Lugar*. Here, Plaintiff claimed that MCA "under color of law, acted intentionally, recklessly, wantonly, with malice, and with deliberate indifference to Plaintiff's property interests and due process of law when [it] seized property from Plaintiff's business without inventorying and/or providing Plaintiff an inventory of the property seized." Compl. ¶ 53. Plaintiff set forth facts that MCA "misapplied the judicial order and judgment" and took property of his which was not covered by the writ and did not provide him with an inventory. *See* Pl.Opp. MCA Mot. SJ, at 6. Plaintiff does not challenge the validity of the writ, nor the statutory scheme

under which the writ was granted. If MCA took property from Plaintiff that was improper under the writ, it did not do so under a "right or privilege created by the State or by a rule of conduct imposed by the State"—it did so by abusing and misusing the writ. Abuse and/or misuse of a constitutional statute by a private party is exactly what *Lugar* says does not constitute state action. *See Lugar*, 457 U.S. at 941, 102 S.Ct. 2744 ("private misuse of a state statute does not describe conduct that can be attributed to the State"); *see also Collins*, 878 F.2d at 1153 (no state action found via defendant's performance of citizen's arrest in violation of statute because defendant's actions were contrary to state authority). Both prongs of *Lugar* must be met in order to find state action; because the Court finds that Plaintiff failed to meet the first, it need not analyze the second. Accordingly, the Court finds that Plaintiff has failed to show state action under *Lugar*.

### 2. Joint Action

■ The fact that Plaintiff cannot show state action under the *Lugar* test is not dispositive of his claim, however. The Ninth Circuit has treated the analysis under *Lugar* separately from a claim that private defendants acted jointly with parties who are admittedly state actors. *See Collins*, 878 F.2d at 1149 (distinguishing between theories whereby the private actor might be found to be a state actor under a *Lugar* analysis and a theory of "joint action"). There is no specific formula for defining state action; the extent of state involvement is a factual inquiry. *See Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir.1983). "Joint action ... exists where a private party is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting

under color of law for purposes of § 1983 actions." *Collins*, 878 F.2d at 1154 (citations omitted).[17] The joint action inquiry focuses on whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. *See id.* Joint action therefore requires a substantial degree of cooperative action. *See id.*

A number of Ninth Circuit cases have examined whether a private party who acts with police assistance acts under color of state law. "[M]erely complaining to the police does not convert a private party into a state actor." *Collins*, 878 F.2d at 1155 (finding no state action when abortion clinic employees complained to police officer about protesters and asked them to make arrests but police refused and tried to discourage employees from making citizens' arrests). However, "[a]t some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action." *Howerton*, 708 F.2d at 383. The *Howerton* court cited approvingly the following language from *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981):

> While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

The court in *Howerton* found joint action when the plaintiffs' landlord, with police aid, used self-help to evict them without proper notice and a prior judicial hearing. Police helped the landlord serve the eviction notice, accompanied the landlord when he told the tenant to vacate the premises, went alone to advise the tenants to quit the premises, and accompanied the land-

---

17. Another way that a private party will be found to have engaged in joint action is when they conspire with a state actor to deny a person their constitutional rights. *See Collins*, 878 F.2d at 1154; *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There is no allegation, nor have any facts been brought forth, showing a conspiracy between MCA and any state actors.

lord when he disconnected the tenants' power. *Howerton,* 708 F.2d at 381–82. The tenant testified that she did not object to her utilities being turned off "because 'you don't argue with the police.'" *Id.* at 381. The Court found that the landlords received substantial assistance from the police department. *See id.* at 384–85.

The instant case is analogous to *Howerton.* Here, too, MCA received substantial assistance from the police (through Bugado). As in *Howerton,* Plaintiff put forth evidence that the MCA employees went to execute the writ accompanied by the police (Bugado). He also put forth evidence that Bugado helped in the execution of the writ by trying to stop Plaintiff from interfering and eventually arresting him. This is even stronger police action than in *Howerton,* where the police presence merely intimidated the plaintiff into submission; here, the police presence was used to physically stop Plaintiff from protesting. Bugado did not just stand by and watch the MCA employees execute the writ, but actively told Plaintiff to sit still and be quiet and then arrested him. Taking the facts averred by Plaintiff as true, MCA employees were willful participants in joint action with the State or its agents. MCA put forth evidence that it did not call Bugado (or ask for assistance in any way from the MPD)—this does not show conclusively, however, that once Bugado was at the site there was not "a substantial degree of cooperative action." *Collins,* 878 F.2d at 1154. The Court cannot say, on the facts now before it, that as a matter of law MCA did not engage in "joint action" sufficient to make its employees' state actors for purposes of § 1983. Accordingly, MCA's motion for summary judgment on Plaintiff's constitutional claim is DENIED.[18]

### 3. Policy of Tolerating Excessive Force

Finally, to the extent that Plaintiff alleges that MCA acted unconstitutionally by

tolerating a policy of excessive force or unlawful arrests (*see* Compl. ¶ 52), this claim fails. As the Court explained in Part II.A.3, *supra,* this claim is completely unsupported factually against the MPD. The Court finds that it is similarly unsupported against MCA. Accordingly, regardless of whether MCA acted under color of state law, the Court finds that Plaintiff has not brought forth evidence to satisfy his burden at trial that MCA deprived him of some right, privilege, or immunity protected by the constitution by tolerating a policy of excessive force or unlawful arrests. Summary judgment is GRANTED to MCA on this issue.

### B. State Tort Claims

### 1. Respondeat Superior

### a. Viveiros

▮▮▮ The Court finds that MCA is not liable via respondeat superior for any actions of Viveiros. It is undisputed that Viveiros was hired as an independent contractor to execute the writ. An employer is generally not liable for damages arising from the negligence or misconduct of an independent contractor. *See Fraser v. Morrison,* 39 Haw. 370, 1952 WL 7360, at *4 (1952) (holding that creditor was not liable for emotional distress caused by the independent contractor collection agency it hired). The Restatement of Torts offers a similar general rule. "Except as stated in § [§ ] 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement (Second) of Torts § 409 (1965). The exceptions include, *inter alia,* if a tort is committed by the contractor pursuant to orders or directions negligently given by the employer (§ 410) and if the employer is negligent in selecting the independent contractor (§ 411). Plaintiff has

---

18. The Court does not here conclude that MCA acted under color of state law. Such a finding would be inappropriate considering

that Plaintiff has not moved for summary judgment on this issue.

not argued nor alleged facts that any exceptions to the general rule apply such that MCA would be liable for the actions of Viveiros. Accordingly, to the extent Plaintiff asserts claims against MCA for the tortious acts of Viveiros, summary judgment is GRANTED for MCA on those claims.

### b. Bugado

To the extent Plaintiff alleges that MCA is liable for Bugado's action via respondeat superior, he fails. *See* Compl. ¶¶ 60, 64, 68, 72, & 79. Plaintiff has not alleged any facts of a relationship between MCA and Bugado—vicarious liability is unwarranted. The Court GRANTS MCA's motion for summary judgment on this issue.

### c. MCA Employees

MCA argues that it cannot be held liable via respondeat superior for the acts of the MCA employees who went to UpCountry on April 14, 1997 because "Plaintiff has not named any employees of [MCA] or any other individual as Doe Defendants. Obviously, no vicarious liability can be imposed on [MCA] for the negligence or misconduct of unknown and unnamed parties." MCA Mot. SJ, at 14. The Court is not persuaded. First, MCA does not point to any authority for the proposition that the employee must be named as a party in order for respondeat superior liability to attach. Second, MCA never denies that its employees were present at UpCountry. Third and most significantly, they are hardly "unknown" parties. MCA knows which of its employees were present—they informed Plaintiff of their names in the "Response to Plaintiff's Second Request for Answers to Interrogatories." *See* Reply MCA Mot. SJ, Ex. 3, at 2. Accordingly, the Court finds that at this juncture, MCA has not presented any reason why it cannot be held liable via respondeat superior for the actions of its employees at UpCountry on April 14, 1997.

### 2. Negligence

Plaintiff asserts a claim for negligence against MCA: "Defendants MCA and/or certain of the Doe Defendants had a duty and obligation to conform their actions and conduct within the laws of the State of Hawaii and the United States, and they breached said duty when they, individually and/or collectively, caused and/or participated in the unlawful arrest, detaining, seizure of property, service of process, and/or use of excessive force against Plaintiff." Compl. ¶ 59.

In its motion for summary judgment, MCA argues that Plaintiff does not allege the breach of any duty owed by it to Plaintiff. *See* MCA Mot. SJ, at 7. Plaintiff explains his claim in his opposition brief: "[MCA] did on [sic] fact owe a duty to the Plaintiff. They had a duty to insure that only property that [was] subject to levy would be taken. This duty was breached when their employees took the plaintiff's personal property and tools of the trade." Pl.Opp. MCA Mot. SJ, at 6.[19]

A negligence action lies only when the defendant owes a duty to the plaintiff. *Hao*, 869 P.2d at 219. Plaintiff asserted a duty on behalf of MCA to not take property which is not subject to levy when executing a writ. He also put forth facts showing that MCA breached this duty when it took property exempt under the writ, such as his personal property and tools of the trade. Finally, he put forth evidence of damages, both emotional and monetary, which he states were caused by the breach. The Court finds that Plaintiff has carried his burden of establishing the

---

**19.** Plaintiff also appears to attempt at this late date to challenge "the constitutional validity of a Writ of Execution ["Writ"] that was absent *any* notice regarding exempt properties and/or how or where to invoke prompt post-seizure relief." Pl.Opp. MCA Mot. SJ, at 6 (change and emphasis in original). Plaintiff did not assert such a charge in his complaint and the Court will not address it now. Moreover, Plaintiff should have made this argument in the state court action which granted the writ to MCA.

essential elements of a negligence claim against MCA. *See Nielsen,* 989 P.2d at 274 (stating elements of negligence claim in Hawaii). MCA has not shown that Plaintiff's claim is factually unsupported or that it is entitled to summary judgment. Accordingly, its motion for summary judgment on this issue is DENIED.

However, to the extent that Plaintiff alleges negligence by MCA by the alleged unlawful arrest or use of excessive force on Plaintiff, these claims are meritless. *See* Compl. ¶ 59. Plaintiff sets forth zero facts showing that MCA employees were personally involved in those actions. Accordingly, MCA's motion for summary judgment on these issues is GRANTED.

### 3. Abuse of Process

It is undisputed that MCA had a validly issued order, judgment, and writ of execution against Plaintiff. It is also undisputed that Plaintiff owed MCA money. However, Plaintiff asserts that MCA committed abuse of process when the writ was executed in an abusive and faulty manner for the ulterior purpose of putting him out of business.

■ As explained above, to state a claim for abuse of process, Plaintiff must show (1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding. *See Wong,* 772 P.2d at 699–700. An improper ulterior motive must be the primary reason for use of the process. *See id.* at 700. The *Wong* court explained that "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* (citing Restatement (Second) of Torts § 682, cmt. b).

■ Plaintiff brought forth evidence of an ulterior motive, averring that while the MCA employees seized property from him, Myron Miyake, the son of MCA's owner, asked Plaintiff "in a mocking and malicious voice … how I liked the way his father put the competition out of business." Pourny MCA Decl. ¶ 7. There is also evidence, put forth by Plaintiff, that property was taken from him during the execution of the writ that was improper. Taking the evidence presented in the light most favorable to Plaintiff, the Court finds that this evidence satisfies the *Wong* two-prong test. It is a question of material fact whether MCA's manner of executing the writ was done for the primary (and improper) motive of putting Plaintiff out of business, or if this was merely an "incidental motive," or if it had no part in MCA's decision at all. MCA argues that it only took approximately $11,000 in property and therefore, it clearly did not intend to put Plaintiff out of business. The significance of the amount of property seized (and indeed, the amount of property seized) is clearly a factual question. Because Plaintiff has carried his burden and MCA has not shown that there are not any genuine issues of material fact, the Court DENIES MCA's motion for summary judgment on this issue.

### 4. Conversion

■ Plaintiff brought forth evidence that when the writ was executed, items were seized by MCA that were exempt by the writ, namely his personal tools and items on consignment. *See* Pourny MCA Decl. ¶ 4. Plaintiff claims that he did not receive an inventory of what was taken until the instant case was filed and he was deposed (more than two years after the execution of the writ). He also claims he did not receive back all of the seized property. MCA denies taking property exempt from the writ, but contends that even if it did so, all was returned to Plaintiff. MCA points to the stipulation in the bankruptcy court that all seized property would be returned to Plaintiff. Taking the evidence in the light most favorable to Plaintiff, the Court concludes that summary judgment is inappropriate at this time. Plaintiff has brought forth evidence of a

taking without his consent, an unwarranted assumption of ownership, an illegal use or abuse of the chattel, and a wrongful detention after demand. While the bankruptcy court stipulation is persuasive, it does not show affirmatively that the property was returned, only that the parties agreed to return it. Plaintiff declares that he did not receive back all of his property. *See* Pourny Cty. Defs.Decl. ¶ 10. In any event, even if the property was eventually returned, that does not change the fact that there is evidence that a conversion had already occurred. The tortious act does not disappear simply because reparations are (allegedly) made. Material issues of fact remain, precluding summary judgment. MCA's motion for summary judgment on this issue is DENIED.

**5. Breach of Contract**

██ The elements of a contract are, "an offer and acceptance, consideration, and parties who have the capacity and the authority to agree as they do." *In the Interest of Doe,* 90 Hawai'i 200, 978 P.2d 166, 174 (App.1999). There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. *See Carson v. Saito,* 53 Haw. 178, 489 P.2d 636, 638 (1971). A party asserting the existence of an oral contract must prove these elements by a preponderance of the evidence. *See id.*

██ Plaintiff testified in his declaration that he had an agreement with Jorgensen that the sheriff and/or MCA would not seize the property from Plaintiff's store which was being sold ˆon consignment and/or already sold and awaiting delivery. More specifically, Plaintiff testified that they agreed that the writ would not be executed *until* the property at UpCountry was categorized by its status. *See* Pourny MCA Decl. ¶ 6. Jorgensen's affidavit makes clear that he agreed to wait on the executing the writ *if* Plaintiff verified the status of the various property. In other words, it appears undisputed that there

was a contract, but Plaintiff and MCA disagree on whether Plaintiff's time to fulfill the condition (documenting the status of the various property) had lapsed such that MCA was free to execute the writ. This is a question of fact. MCA's motion for summary judgment on this issue is DENIED.

**6. Assault and Battery**

Plaintiff does not set forth facts or even an argument as to why summary judgment should not be entered against him on his claims for assault and battery against MCA. First, in opposition to MCA's motion for summary judgment on these claims, Plaintiff writes, "Plaintiff has a direct claim for the assault and battery against Defendants Bugado and Vivaries [sic]." Pl.Opp. MCA Mot. SJ, at 10. Second, there is no evidence that any MCA employees unlawfully touched Plaintiff without his consent, as required by *Ozaki. See* 954 P.2d at 668. It is undisputed that when the MCA employees arrived at Up-Country, none of them did anything other than assist in identifying and carrying property onto trucks. *See* MCA CSF ¶ 8. Moreover, Plaintiff offers no evidence to contradict sworn testimony by Myron Nakamura that no MCA employees had physical contact with Plaintiff. Third, there is no evidence that he was placed in apprehension of an immediate and harmful or offensive contact by the MCA employees, or that the MCA employees intended to inflict a harmful or offensive contact or cause him apprehension. *See* Restatement (Second) of Torts § 21(1). Plaintiff's claims are completely unsupported factually. Accordingly, the Court GRANTS MCA summary judgement on Plaintiff's assault and battery claims.

**7. Intentional and/or Negligent Infliction of Emotional Distress**

██ Plaintiff set forth facts that MCA intentionally took his property without legal authorization. It is undisputed that Plaintiff was getting upset by incorrect

items being levied upon. He also set forth evidence that Myron Miyake, an MCA employee and the owner's son, spoke to him in a "mocking and malicious voice" while MCA took his property. Finally, he presented evidence that he was humiliated and contemplated suicide after the execution of the writ.

The Court finds that Plaintiff alleged sufficient facts to meet his burden at trial for his IIED claim. There is evidence from which a reasonable factfinder could conclude that the MCA employees' actions were intentionally done, were unreasonable, and that they should have recognized that their actions were likely to result in emotional distress. MCA has not shown that there are not genuine questions of material fact. Accordingly, the Court DENIES MCA's motion for summary judgment on Plaintiff's IIED claim.

The Court also DENIES MCA's motion for summary judgment on Plaintiff's claim for NIED. Plaintiff brought forth evidence that because of MCA's actions, he became depressed and even contemplated suicide. It is clearly a question of fact whether a reasonable man would be unable to adequately cope with the MCA employees' actions and whether Plaintiff's depression and suicidal thoughts were a reasonably foreseeable consequence of their actions. Summary judgment is therefore inappropriate.

### CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motions to strike, GRANTS IN PART AND DENIES IN PART MCA's motion for summary judgment, and GRANTS IN PART AND DENIES IN PART County Defendants' motion for judgment on the pleadings, or in the alternative, for summary judgment

IT IS SO ORDERED.