892 P.2d 475

STATE of Hawai'i, Plaintiff–Appellee,

v.

Simin NAJIBI, Defendant–Appellant.

No. 16574.

Intermediate Court of Appeals of Hawai'i.

April 4, 1995.

Theodore Y.H. Chinn (Amie L. Thompson, on the opening brief), Deputy Public Defenders, Honolulu, for defendant-appellant.

Charlotte J. Duarte, Deputy Pros. Atty., City and County of Honolulu, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

Defendant Simin Najibi (Simin) was charged with Pedestrians on Roadways, Hawai'i Revised Statutes . (HRS) § 291C–76 (1985); Disorderly Conduct/Unreasonable Noise, HRS § 711–1101(1)(b) (1985), as a petty misdemeanor, HRS § 711–1101(3); and Harassment, HRS § 711–1106 (Supp.1992). She was acquitted of Harassment and did not appeal her conviction of Pedestrians on Roadways.

Simin appeals the district court's October 1, 1992 judgment convicting her of Disorderly Conduct/Unreasonable Noise, HRS § 711–1101 (1985), as a petty misdemeanor, and fining her $100. We conclude that the evidence is insufficient to support the conviction, and we reverse the October 1, 1992 judgment.

HRS § 711–1101 states in relevant part as follows:

> (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he [or she]:

> \*   \*   \*   \*   \*   \*

> (b) Makes unreasonable noise; ...

> \*   \*   \*   \*   \*   \*

> (2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to him [or her], including the nature of the location and the time of the day or night, his [or her] conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the

same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

\* \* \* \* \* \*

(3) Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if he [or she] persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

The Supplemental Commentary notes:

Act 79, Session Laws 1979, added subsection (2) in order to clarify the offense of unreasonable noise.

Senate Conference Committee Report No. 63 on Senate Bill No. 1049, which ultimately was enacted as Act 79, in 1979 Senate Journal at 982 states:

Your Committee finds that under current statutes, in order to convict a person under the disorderly conduct statute for making unreasonable noise, one must prove that such person's actions involved a gross deviation from the standard of conduct of a law-abiding citizen. Prosecution has been difficult using this broad, if not vague, definition. This bill authorizes any police officer to make a determination of what is unreasonable noise and makes the failure of a person to heed his [or her] warning a punishable offense.

Simin was orally charged in relevant part as follows:

On or about June 9th, 1992, ..., with intent to cause physical inconvenience or alarm by a member or members of the public or recklessly creating a risk thereof, you did make [un]reasonable noise and did persist in said disorderly conduct after reasonable warning or request to desist, thereby committing the petty misdemeanor offense of disorderly conduct[.]

Police officer Daniel Gooch (Officer Gooch) testified that on June 7, 1992, police officers in Honolulu received a memo from the chief of police "stating due to all the pedestrian fatalities, that you are to cite, all the citations are to be turned in for jaywalking, pedestrian on roadway, walking against red [lights]."

Officer Gooch further testified that it was police policy that if the person cited did not have identification, the person would be physically arrested whether or not the police knew the identity of the person.[1]

Officer Gooch described the relevant facts as follows. On Tuesday, June 9, 1992, at 3:45 p.m., the following incident occurred at Bethel Street fronting 1121 Bethel Street near Hotel Street. Bethel Street is a one-way street for mauka (towards the mountain) bound traffic. It is four lanes wide. From the left side to the right side facing mauka, we will label these lanes as 1, 2, 3, and 4. This is a commercial area, and lanes 1 and 4 are used for parking except after 3:30 p.m. on working days. On this working day, however, vehicles were illegally parked in lanes 1 and 4.

A woman walked from the northwest side of Bethel Street to talk to the male driver of a truck stopped in lane 3. Officer Gooch observed that the woman and the stopped vehicle were impeding traffic and creating a traffic hazard so he "yelled for her to get out of the street and the truck to move." The woman "looked at [Officer Gooch], said something else to the [driver], and then walked back across the street. At that time, [Officer Gooch] told her to come over to [him]." The woman refused and responded with an obscenity, so Officer Gooch got out his tag book and walked over to her. At that point, Officer Gooch "realized who [he] was dealing with so [he] went and called [his] sector sergeant right away." In his words, "we're

---

1. In the situation where the police do not know the identity of the person, the problem is apparent. In the situation where the police do know the identity of the person, however, Hawai'i Revised Statutes (HRS) § 291C–164 (1985) provides that unless another law authorizes the arrested person to be taken before a district judge, an arrest for a violation of the traffic laws shall be by the issuance of a citation. HRS § 291C–164 is very similar to HRS §§ 286–10 (1985) and 431:10C–117(a)(1) (Supp.1992), which we construed in *State v. Bolosan*, 78 Hawai'i 98, 890 P.2d 685 (App.1994) *rev'd on other grounds*, 78 Hawai'i 86, 890 P.2d 673 (1995) to preclude a physical arrest.

told whenever we deal with her, to call your sector sergeant."

The woman was Simin. Officer Gooch asked for her identification. Simin again responded with an obscene command and told Officer Gooch. that she did not have identification. Simin testified that she "thought we were going to have a little conversation going back and forth so [she] was about to tell him that what if somebody doesn't have an ID." Officer Gooch called for assistance and then arrested her. Simin testified that immediately after she was arrested, her cousin Bahram Najibi (Bahram) removed her identification from her purse and gave it to Officer Gooch but Officer Gooch said it was too late. Officer Gooch admitted that Bahram "presented a[n] ID after [Simin] stated she had none."

Upon her arrest, Simin was handcuffed with her hands behind her back. Simin contended that the handcuffs were on too tight and protested by kicking and other actions and yelling statements interspersed with obscenities and obscene threats and commands. This activity drew a crowd of fifty to seventy-five observers. The scene caused a pedestrian and vehicular traffic jam. Simin was advised by Officer Gooch to "[k]eep it down. You're going to be arrested for disorderly conduct now[.]" Simin persisted.

The district court found, *inter alia*, that:

6. [Police officer Daniel] Gooch warned [Simin] that failure to produce some form of identification could result in her arrest, but [Simin] still refused to supply any identification, became uncooperative, and began to yell and scream obscenities at [Officer] Gooch.

7. Due to [Simin's] behavior at this time, a crowd of people began to gather at 1121 Bethel Street which blocked pedestrian passage on the sidewalk and vehicular traffic on Bethel Street.

8. [Officer] Gooch gave [Simin] a reasonable warning to stop her actions in that [Officer] Gooch told [Simin] to keep it down or [Simin] would be arrested for Disorderly Conduct, which warning [Simin] failed to heed and continued to yell.

9. [Officer] Gooch put [Simin] under arrest and placed handcuffs upon [Simin's] wrists. [Simin] continued to yell and scream.

10. After having the handcuffs on her wrists for about five minutes, [Simin] began to yell that the cuffs were too tight. This behavior began after [Simin's] cousin, [Bahram] Najibi, directed [Simin] to shout "police brutality."

Simin asserts the following three points on appeal:

1. The district court abused its discretion in denying her request for discovery of Police Commission reports against Officer Gooch which included her pre-arrest complaint against him;

2. The district court abused its discretion in limiting her cross-examination of Officer Gooch on the subject of her pre-arrest complaint against him; and

3. The record lacks sufficient evidence to convict her of Disorderly Conduct because "THERE WAS INSUFFICIENT EVIDENCE ADDUCED TO PROVE THAT SIMIN CAUSED A PHYSICAL INCONVENIENCE OR ALARM BY THE PUBLIC OR THAT SHE HAD THE INTENT TO DO SO."

■ We conclude that there is insufficient evidence of Simin's unreasonable noise on the occasion in question to support the conviction of Disorderly Conduct/Unreasonable Noise either as a petty misdemeanor or as the lesser-included violation. Therefore, we do not address the points stated above.

It is important to note that Simin was convicted of Disorderly Conduct/Unreasonable Noise. The facts, as found by the district court, that Simin's "behavior" caused a crowd of people to gather and that Officer Gooch gave Simin a reasonable warning to stop her "actions" are not relevant.

■ The minimum evidence necessary to prove Disorderly Conduct/Unreasonable Noise as a violation is that the defendant (1) failed to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced and (2) thereby recklessly created a risk of causing a mem-

ber of the public to be physically inconvenienced or alarmed.

If the defendant persists in failing to heed the police officer's admonition, the offense becomes a petty misdemeanor and, under HRS § 701–109 (1985), the violation is a lesser-included offense of the petty misdemeanor.

HRS § 711–1101(2) does not expressly limit the police officer's decision "that the noise is unreasonable" to a standard of reasonableness. In other words, it does not expressly exclude situations where the police officer's decision is unreasonable, arbitrary, and capricious. However, interpreting HRS § 711–1101(2) as permitting the police officer's decision to be unreasonable, arbitrary, and capricious would cause HRS § 711–1101 to be unconstitutional because it would give the government the discretionary power to arbitrarily restrain the exercise of protected noncommercial speech. *Saia v. People of State of New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948).

> When a statute is susceptible of two constructions, one of which supports it and gives it effect, and the other renders it unconstitutional and void, the former is to be adopted, even though the latter may be the more natural interpretation of the language used, for an act is never to be construed as unconstitutional if a reasonable construction can be placed upon it which will render it valid.

*Pan Am. Airways Co. v. Godbold*, 36 Haw. 170, 182 (1942) (quoting *State v. Clement Nat'l Bank*, 84 Vt. 167, 200, 78 Atl. 944, Ann.Cas. 1912D, 22 (1911)).

 In that light, we interpret HRS § 711–1101(2) as implicitly requiring that a police officer's decision that noise is unreasonable must be supported by the police officer's objectively reasonable finding that the noise is a gross deviation from the standard of conduct of a law-abiding citizen.

Simin was charged with the offense as a petty misdemeanor. Both the violation and the petty misdemeanor require the police officer's decision that the noise is unreasonable to be supported by the officer's objectively reasonable finding that the noise is a gross deviation from the standard of conduct of a law-abiding citizen.

On that working day (Tuesday), at that time (3:45 p.m.), and at that location (Bethel Street near Hotel Street, a downtown commercial area), was Officer Gooch's decision to communicate his admonition supported by an objectively reasonable finding that the noise Simin was making was a gross deviation from the standard of conduct of a law-abiding citizen? In light of *State v. Faulkner*, 64 Haw. 101, 637 P.2d 770 (1981), our answer is no.

In *Faulkner*, the time was 4:30 p.m., the date was June 6, 1978, a weekday, and the place was a driveway exiting the Honolulu Zoo. Faulkner was convicted of Disorderly Conduct based on (1) the noise he made (yelling) to show his dissatisfaction with the way the police were conducting their investigation of his complaint against another person who was present and (2) the attention his noise drew from persons nearby. The Hawai'i Supreme Court concluded that this evidence was insufficient to support the conviction.

Accordingly, we reverse the district court's October 1, 1992 judgment convicting defendant Simin Najibi of Disorderly Conduct by Making Unreasonable Noise, HRS § 711–1101(1)(b), as a petty misdemeanor, HRS § 711–1101(3).