145 P.3d 776

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Aurelio MOLETA, Defendant–Appellant.**

**No. 26248.**

Intermediate Court of Appeals of Hawai'i.

July 31, 2006.

**234**

Bentley C. Adams, III, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Aurelio Moleta III (Defendant or Mr. Moleta) appeals the October 27, 2003 judgment of the District Court of the First Circuit (district court)[1] that convicted him of reckless driving,[2] and found him liable for

---

1. The Honorable Leslie A. Hayashi presided.

2. Hawaii Revised Statutes (HRS) § 291–2 (Supp. 2005) reads, in relevant part: "Whoever operates any vehicle ... recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle ... and shall be fined not more than $1,000 or imprisoned not more than thirty days or both." HRS § 702–206(3) (1993) defines "recklessly" as follows:

(3) "Recklessly."
(a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.

(b) A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.
(c) A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.
(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

disregarding a stop sign [3] and displaying an obstructed license plate.[4] Defendant contends there was insufficient evidence to support the reckless driving and obstructed license plate charges, and that the reckless driving offense was in any event *de minimis*.[5] Defendant argues secondarily that if his reckless driving conviction is affirmed, his stop sign infraction should be merged thereinto as lesser-included.

We conclude there was substantial evidence to support the obstructed license plate infraction, and affirm. We hold, however, that there was not substantial evidence to support Defendant's reckless driving conviction, and reverse. Consequently, we also affirm the stop sign infraction.

3. HRS § 291C–63(b) (1993) provides:

Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on the other highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection.

4. HRS § 249–7 (1993) provides, in pertinent part:

(a) Upon receipt of the tax the director of finance shall number and register the vehicle in the owner's name in a permanent record or book to be kept by the director for this purpose, and shall furnish the owner thereof with a receipt showing upon its face the license number issued for the vehicle and the fact that the license tax has been paid thereon for the whole or the remainder of the current year in which the receipt is issued. The director of finance shall also furnish the owner, upon the original registration of the vehicle, two number plates for the vehicle or one plate in the case of trailers, semitrailers, or motorcycles with the registration number marked thereon. Upon the payment of the tax for each year a tag or emblem bearing a serial number and the month and year of expiration shall be provided to the owner. Transfer of current number plates, tag, or emblem, except as authorized by this chapter or by chapter 286, is punishable by a fine of not more than $50 for each offense.

(b) Upon an original registration the director of finance shall fix, and shall charge to the owner, a fee equal to the cost of the number plate and tag or emblem plus the administrative cost of furnishing the plate and tag or emblem and effecting the registration. Upon the issuance of a new series of number plates as determined by the directors of finance of each county through majority consent, the director of finance shall charge the owner a fee equal to the costs of the number plate plus the administrative cost of furnishing the plates. Upon issuing a tag or emblem, the director of finance shall charge the owner a fee of 50 cents. The owner shall securely fasten the number plates on the vehicle, one on the front and the other on the rear, at a location provided by the manufacturer or in the absence of such a location upon the bumpers of the vehicle and in conformance with section 291–31 [(illuminated)], in such a manner as to prevent the plates from swinging and at a minimum of twelve inches from the ground. Number plates shall at all times be displayed entirely unobscured and be kept reasonably clean. In the case of trailers, semitrailers, or motorcycles, one plate shall be used and it shall be fastened to the rear thereof at a location provided by the manufacturer or in the absence of such a location at the rear thereof, and in the case of motorcycles in conformance with section 291–31.

(c) Upon the issuance of the tag or emblem the owner shall affix the tag or emblem to the top right portion of the rear number plate, except that all vehicles owned by the State, any county government, any board of water supply, and official representatives of any foreign governments shall be issued registrations which need be renewed only in the new plate issue year.

5. HRS § 702–236 (1993) provides:

(1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

(a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or

(b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

(2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

## I.  Background.

Defendant's bench trial commenced on September 25, 2003 and was continued to and completed on October 27, 2003.  At the start of the trial, Defendant was orally charged with reckless driving, disregarding a stop sign, displaying an obstructed license plate, and violating the basic speed rule.[6]  When asked to plead, Defendant replied, "All I have to say ma'am, is two counts I'm guilty and two counts I'm not."  Defense counsel immediately interceded, "Okay. Not guilty."

The State's case comprised the testimonies of two State deputy sheriffs, Samuel Deuz, Jr. (Sheriff Deuz) and Edward Chang (Sheriff Chang).  On April 27, 2003, at about noon, they were patrolling the Honolulu International Airport, on the upper level of Rodgers Boulevard heading east.  What first caught their attention was the safety check sticker affixed to the lower right hand corner of Defendant's rear license plate.

Sheriff Chang, who was driving, turned on his lights and sirens and pulled Defendant over.  Sheriff Chang walked up to Defendant's window and told him the sticker was illegally obstructing his license plate and should be on his bumper instead.  Defendant did not believe there was a violation.  He protested that his friend had placed the sticker there and had assured him it was okay.

Defendant was upset.  According to Sheriff Chang, Defendant got out of his car and started yelling, "saying I better be right about my laws."  After about twenty minutes of colloquy, Sheriff Chang warned Defendant to remedy the violation, then let him go on his way without a citation.  Sheriff Deuz remembered that Defendant "demonstrated his frustration by saying I should repent to God or something like that, to that effect."

As the sheriffs were getting back into their patrol car, Sheriff Deuz heard Defendant revving his engine at a high rate.  Then, Defendant "just abruptly took off."  Accelerating quickly, Defendant ran the stop sign just before the H–1 Freeway on-ramp, crossing two lanes and cutting off two cars traveling one behind the other.  The sheriffs could tell that the first driver had to brake suddenly to avoid hitting Defendant, because the front end of the car dipped and the rear end rose up.  Sheriff Chang recalled that the following driver followed suit with the same result.  Sheriff Chang acknowledged, however, that the crossing cars were going about fifteen miles per hour, and that neither of their sudden stops produced screeching brakes or smoking tires.  Sheriff Deuz estimated Defendant was also going about fifteen miles per hour when he ran the stop sign—which is the posted speed limit there— but described that as "pretty fast" given the short distance Defendant had traveled.  Both sheriffs allowed, however, that Defendant's tires did not "spin and screech" when he first took off.  Both sheriffs agreed that this incident drew the reckless driving citation.

Seeing the offense, the sheriffs activated lights and sirens and went after Defendant, who was accelerating up the on-ramp to the H–1 Freeway eastbound.  In that area of the on-ramp, the speed limit is twenty-five miles per hour.  Sheriff Chang was doing sixty-five miles per hour in his attempt to catch up with Defendant, and caught him only because they had to slow for traffic up ahead.  About a half-mile after Defendant ran the stop sign, the sheriffs pulled him over on the airport viaduct and cited him for the offenses with which he was later charged.  Sheriff Chang clarified that it was Defendant's speed on the on-ramp that drew the basic speed rule citation.

---

**6.**  The basic speed rule, HRS § 291C–101 (1993), provides:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent and having regard to the actual and potential hazards and conditions then existing.  Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic, or by reason of weather or highway conditions.

At the end of the bench trial, the District Court of the First Circuit found that the basic speed rule violation had "merged" into the reckless driving conviction.  The State does not cross-appeal nor contest that finding.

After the State rested, Defendant tendered a motion for judgment of acquittal:

> Your Honor, we would make a motion for judgment of acquittal. As far as the reckless driving goes, evidently that's related to the stop of the stop sign. The only Hawaii case on reckless driving, Your Honor, is a very egregious case where the car was speeding through, not only traffic, but pedestrians. Pedestrians jumping out of the way.[7] Under the—under a case law, Your Honor, this is—certainly doesn't rise anywhere near reckless driving even if you looked at it from the State's point of view.
>
> Also motion for judgment of acquittal on the—either cases, Your Honor.

(Footnote supplied.) The State responded:

> Your Honor, in the officer's training and experience the speed of the vehicle is not pertinent. The statute says driving an animal or a vehicle recklessly. In this case where two vehicles had to come to a complete stop. The fact that they were obeying the speed limit and doing 15 (fifteen) miles an hour does not affect the fact that the defendant recklessly pulled his car across several lanes, disregarded the stop sign, went through, and caused them to stop in a fashion it with—for which if they hadn't stopped, they may very well have ended up in a—in a motor vehicle collision. Not one, but two cars. The fact that they weren't doing a hundred and fifteen (115) miles an hour shouldn't bear on this, Your Honor.

The district court declined to acquit.

Defendant, a reverend, was the only witness in his defense. That noon, he had just dropped his wife off to work at the airport when he saw the sheriffs in his rearview mirror. Sheriff Chang pulled him over and told him his safety sticker was illegally placed, but Defendant disagreed, pointing out that he had bought the car that way from his wife's friends. Defendant added that his license plate was legible in any event.

Defendant insisted that his encounter with Sheriff Chang was "nice," despite the disagreement, but that he was pressed for time because he had to pick up his kids from his dad who was watching them. Sheriff Chang kept him there for so long, however, fifteen to twenty minutes, that Defendant became upset. Defendant admitted telling Sheriff Chang, "You need to repent to God." And not in a nice way, which he regretted. Defendant could see that his remark angered Sheriff Chang.

Defendant described what happened next:

> Then he let me go. Then I—I—I got in my car, and I proceeded because I know it's a 15 (fifteen) miles per hours. But, inside my heart it's just that I was upset because he—he—I had to get my kids and my dad waiting long. So, as I were going, this is what I did. The stop sign was there. So, I did like this. I—I made a quick stop. I looked, and there were no cars, and I went. But actually I wrong with—because you supposed to complete stop, which I didn't do, ma'am.

Defendant's counsel asked him more about the stop sign violation:

> Q So, you're saying that you did not come to a complete stop?
>
> A Yes, ma'am.
>
> Q When you didn't come to a complete stop, were other cars that . . .
>
> A I did not see 'cause I—I did not get into no car accident if it were so.
>
> Q Do you think you looked well enough to tell?
>
> A Yes, 'cause I—I got a kinda' quick reflex.
>
> Q So, you looked quickly?
>
> A Yes.

Defendant claimed that the on-ramp to the H–1 Freeway changes along its course from a twenty-five to a thirty miles per hour speed zone. He stated that he was driving about forty-five miles per hour there because he was in a hurry. He heard the sheriffs' siren when he was on the freeway and did not attempt to flee. Sheriff Deuz told him to pull over. "He got his bull horn. He said, 'Pull over. Pull over.'" Defendant asked Sheriff Chang if he could use the sheriff's cell phone to call and say he was going to be late. Rudely rebuffed, Defendant received his four

---

7. Presumably, *State v. Cadus*, 70 Haw. 314, 315– 16, 769 P.2d 1105, 1107 (1989).

traffic citations. Towards the end of his testimony, Defendant reiterated that he did not see any cars swerve or stop short to avoid hitting him as he rolled past the stop sign.

In closing, defense counsel conceded the speeding and stop sign infractions, but contested the rest:

You Honor, as you could see from the testimony of Mr. Moleta he was very candid. He was trying very hard to be truthful. He does admit that he rolled through the stop sign. He does admit that he was speeding. But, he does deny, Your Honor, that any cars had to brake quickly or swerve out of his way.

I would also argue, Your Honor, that the two cars that had to stop abruptly does not reach the level for reckless driving, Your Honor. If we—if we look in the Uniform Commercial Code and see—I'm sorry, in—in our Code and see what reckless is, it's—like I said, one case says that it's very egregious. As far as—I'm sorry. I had it. One moment. Your Honor, it's under [Hawaii Revised Statutes (HRS) §] 702–206 [ (1993) ], reckless. It has to be a substantial and justifiable risk, consciously disregarding that. In fact, it goes so far as to say it's a gross deviation from the standard that—of conduct that a law abiding person would observe. Your Honor, I don't—I don't think that rolling through the stop sign would meet that level and, certainly, by case law. This is nowhere near reckless driving.

Mr. Moleta's admitted the rolling through the stop sign, the speed, Your Honor.

I would argue that he is not guilty of reckless driving. And, as far as obstructing the license plate, he does say that the—they were very visible. He had been driving that car around for quite a while, and that the officers were upset with him primarily through his own actions, Mr. Moleta's own actions, Your Honor.

I believe that when they finally stopped him, they were trying to cite him for everything they could find, Your Honor, because he had upset them.

The district court ruled as follows:

Okay. All right. Then, at this time, having heard the testimony of Sheriff Duce (sic), as well as Sheriff Chang, as well as the defendant, there is an issue of credibility here. And, in this case the State (sic) does find the State's witnesses to be more credible with respect to what occurred on April 27, 2003, in the City and County of Honolulu.

Basically, the defendant was pulled over because of an obstruction on his license plate. He argued with the sheriff, Sheriff Chang, about this feeling that he had received the car that way and, therefore, it wasn't a violation and he hadn't been stopped before. But, Sheriff Chang was kind enough to just give him a warning about it. And then, apparently because of the length of time that the stop was involved, defendant then became very irritated and apparently revved his engine, took off abruptly, went through the stop sign, in which—at which point he cut off two people. And, vehicle one had to stop very hard to avoid a collision, as did a second vehicle, which, I think, meets the requirement of the reckless driving under [HRS §] 291–2 [ (Supp.2005) ], which basically talks about operating a vehicle in a way that is in—recklessly. That is, in disregard of the safety of person or property.

So, I do find that the State has met its burden of proof beyond a reasonable doubt to show that the defendant is guilty of the obstructed license plate.

Defendant's own admission is that he went through the stop sign. Therefore, the defendant is guilty of the [HRS §] 291[C]–63(b) [ (1993) ] charge.

And the Court does find that the defendant is guilty of the reckless charge under [HRS §] 291–2. The Court does find, however, that with respect to the reckless driving it started as he went through the stop sign and almost had the collision. And, therefore, the [HRS §] 291[C]–101 [ (1993) ] merges with the reckless. So, the Court finds the defendant just guilty of the three offenses and not of the basic speed rule violation.

## II. Standard of Review.

█ We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (brackets, citations, block quote format and some internal quotation marks omitted).

█ "An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." *Id.* at 139, 913 P.2d at 65 (citations omitted).

It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part. As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous.

*Id.* (citations omitted).

## III. Discussion.

### A.

On appeal, Defendant first contends there was insufficient evidence as a matter of law to convict him of reckless driving. As a fallback position, Defendant contends his conduct was *de minimis* in any event.

On his primary point, Defendant essentially avers there was not substantial evidence adduced at trial to show that he drove recklessly; in other words, that he "*consciously disregard[ed]* a substantial and unjustifiable risk[,]" HRS § 702–206(3)(a) (emphasis supplied), to "the safety of persons or property[,]" HRS § 291–2, and the "disregard of the risk involve[d] a *gross deviation* from the standard of conduct that a law-abiding person would observe in the same situation." HRS § 702–206(3)(d) (emphasis supplied).

In answer, the State first points out that the district court, in its kuleana, *see East-man,* 81 Hawai'i at 139, 913 P.2d at 65, found the testimonies of Sheriffs Deuz and Chang credible. On that foundation, the State argues:

As the trial court determined, it was after Defendant had disregarded the stop line and proceeded into the intersection that the two cars were forced to come to a rapid stop. Therein lies the recklessness of Defendant's stop line infraction; he did so in apparent disregard of the oncoming traffic and the inherent danger that his actions presented.

Answering Brief at 11.

█ On this point, we agree with Defendant. The district court, as the trier of fact, had discretion to believe one version of the facts over another. *See State v. Batson,* 73 Haw. 236, 249, 831 P.2d 924, 931 (1992). Nonetheless, the facts as construed most favorably for the prosecution do not show the requisite state of mind for recklessness pursuant to HRS § 702–206(3).

Given the difficulty of proving the requisite state of mind by direct evidence in criminal cases, "[w]e have consistently held that . . . proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the [defendant's conduct] is sufficient. . . . Thus, the mind of an alleged offender may be read from his

acts, conduct and inferences fairly drawn from all the circumstances."

*Batson,* 73 Haw. at 254, 831 P.2d at 934 (brackets and ellipses in the original) (quoting *State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) (citations omitted)).

In our case, the prosecution adduced no evidence of behavior or omissions by Defendant that would manifest his own awareness of any risk. Neither sheriff testified as to the distance between Defendant's car and the cars Defendant allegedly cut off. Furthermore, there was no evidence of screeching tires, honking horns, nor any other warning that should have been perceptible to Defendant. Sheriffs Deuz and Chang, from their vantage point behind Defendant and the crossing cars, saw the latter brake suddenly; nevertheless, the record does not support the inference that Defendant knew whether "the safety of persons or property" was in peril. HRS §§ 291–2 & 702–206(3)(a). *Cf. State v. Cadus,* 70 Haw. 314, 315–16, 320, 769 P.2d 1105, 1107, 1110 (1989) (affirming conviction for reckless driving where the defendant "sped through ... crowded intersections with screeching tires, prevented many pedestrians from traversing the crosswalks, caused other pedestrians already on the road to jump back onto the curb, and disregarded the right-of-way which other vehicles had possessed"). At most, the evidence "is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion[,]" *see Batson,* 73 Haw. at 248–49, 831 P.2d at 931 (citation omitted), that Defendant committed a traffic infraction, *i.e.,* disregarding a stop sign.

Furthermore, we agree with Defendant that there was insufficient evidence of a "gross deviation from the standard of conduct that a law-abiding person would observe in the same situation." HRS § 702–206(3)(d). In doing so, we abide by our recent construction of the term "gross." In *State v. Moser,* 107 Hawai'i 159, 111 P.3d 54 (App.2005), we explained:

> "Gross deviation" is not defined in the disorderly conduct statute, nor does Hawai'i case law explain the meaning of the term. *See State v. Najibi,* 78 Hawai'i 282, 284, 892 P.2d 475, 477 (App.1995) (mentioning gross deviation standard but not

discussing it). *Black's Law Dictionary* defines "gross" as "[o]ut of all measure; beyond allowance; flagrant; shameful; as a gross dereliction of duty, a gross injustice, gross carelessness or negligence. Such conduct as is not to be excused." *Black's Law Dictionary* 702 (6th ed.1990) (citation omitted). *See also State Bd. of Dental Exam'rs v. Savelle,* 90 Colo. 177, 8 P.2d 693, 696 (1932) (adopting above definition of "gross").

*Id.* at 172, 111 P.3d at 67 (brackets in the original). Assuming *arguendo* that all failures to heed a stop sign involve an unjustifiable risk, the evidence does not show any risk that was "substantial" *i.e.* "gross[,]" HRS § 702–206(3)(d), *i.e.,* "beyond allowance ... not to be excused." *Moser,* 107 Hawai'i at 172, 111 P.3d at 67 (citation and internal quotation marks omitted). Defendant's driving was, at most, evidence of a traffic infraction, not a reckless driving crime.

We conclude that the State failed to adduce substantial evidence that Defendant "consciously disregard[ed,]" HRS § 702–206(3)(a), any risk to "the safety of persons or property[.]" HRS § 291–2. Moreover, even viewed "in the strongest light for the prosecution[,]" the evidence was not "of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion[,]" *Batson,* 73 Haw. at 248–49, 831 P.2d at 931 (citation omitted), that Defendant's driving "involve[d] a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation." HRS § 702–206(3)(d).

We therefore reverse Defendant's reckless driving conviction. Hence, we need not reach Defendant's backup argument that his conduct was *de minimis.*

### B.

For his second point of error on appeal, Defendant argues that if his reckless driving conviction was proper, his stop sign infraction must be set aside because it merged as a lesser included offense. Defendant does not contend there was insufficient evidence to support his stop sign infraction. Accordingly, given our reversal of his reckless driving conviction, we affirm Defendant's stop sign infraction.

## C.

■ For his final point of error on appeal, Defendant contends there was insufficient evidence to support his obstructed license plate infraction. Defendant bases this contention on his assertion that there was no evidence the license plate numbers were obscured or illegible.

First, and to be clear, the evidence—viewed "in the strongest light for the prosecution[,]" *Batson,* 73 Haw. at 248, 831 P.2d at 931—showed that the view of the license plate numbers was indeed obstructed. Sheriff Deuz testified as follows on direct:

Q. I'm sorry, the safety check was what—

A. The safety check emblems were placed on the license plate.

Q. Was it obstructing the view of the numbers?

A. Yes. When you put the emblems on the license late, it's considered obstructing.

At any rate, the violation does not require that the license plate numbers, specifically, be obstructed: *"Number plates* shall at all times be displayed *entirely unobscured* and be kept reasonably clean." HRS § 249–7(b) (1993) (emphases supplied).

Defendant also argues that "it is clear the statute not only does not prohibit the affixing of emblems to a license plate, but specifically requires that certain emblems be affixed thereto." Opening Brief at 20. This argument is neither here nor there. Defendant is referring to HRS § 249–7(c), which reads, in relevant part, "Upon the issuance of the tag or emblem the owner shall affix the tag or emblem to the top right portion of the rear number plate[.]" But as HRS § 249–7(a) makes clear, the "tag or emblem" referred to is the registration sticker issued upon payment of the annual vehicle registration tax, and not the safety check sticker: "Upon the payment of the tax for each year a tag or

emblem bearing a serial number and the month and year of expiration shall be provided to the owner."

Defendant's arguments on this point are without merit. We conclude there was substantial evidence to support Defendant's obstructed license plate infraction, *Batson,* 73 Haw. at 248–49, 831 P.2d at 931, and affirm it.

## IV. Conclusion.

The district court's October 27, 2003 judgment is affirmed in part and reversed in part. We affirm Defendant's stop sign and obstructed license plate infractions. We reverse his reckless driving conviction.

