**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000504
30-JUN-2020
07:49 AM**

NO. CAAP-19-0000504

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellant, v.
JERAMY M. TRONSON, Defendant-Appellee


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CASE NO. 1DTA-19-00119)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Chan, JJ.)

Plaintiff-Appellant the State of Hawai'i (**State**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on May 9, 2019 (**Judgment**), in the District Court of the First Circuit, Honolulu Division (**District Court**).[1] On appeal, the State contends that the District Court erred by granting Defendant-Appellee Jeramy M. Tronson's (**Tronson's**) motion to suppress statements, arguing that Tronson was not in custody or seized until after a standard field sobriety test (**SFST**) was administered to Tronson and he was arrested for

---

[1]  The Honorable Summer Kupau-Odo presided.

Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a) (Supp. 2018).[2]  Thus, the State argues that various of Tronson's statements, and Tronson's performance on the SFST, should not have been suppressed.  The State also challenges Conclusions of Law (**COLs**) 6, 9, 10, 11, 12, and 13 of the District Court's June 13, 2019 Findings of Fact and Conclusions of Law and Order Granting Defendant's Motion to Suppress Statements (**Suppression Order**).

I.   BACKGROUND

On December 24, 2018, at about 3:34 a.m., Honolulu Police Department (**HPD**) Officer Tyler Maalo (**Officer Maalo**) observed Tronson's vehicle nearing the rear of his vehicle, as they were traveling east on South King Street, approaching Kapiolani Boulevard.[3]  As Officer Maalo's vehicle was nearing a concrete island, he observed Tronson's vehicle pass him on the left, and then swerve back into his lane to avoid the concrete

---

[2]    HRS § 291E-61(a) states, in relevant part:

> **§ 291E-61  Operating a vehicle under the influence of an intoxicant.**  (a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[3]    The background facts are taken primarily from the District Court's Findings of Fact (**FOFs**), which are set forth in the Suppression Order, and which are not challenged on appeal.

island, causing Officer Maalo to break hard to avoid a collision. Officer Maalo activated his blue lights and Tronson pulled into a shopping center parking lot and stopped.

Upon approaching Tronson, Officer Maalo informed Tronson that he pulled Tronson over because Tronson almost hit his vehicle.  Tronson apologized for almost hitting the officer's car.  As they were speaking, Officer Maalo detected an odor of alcoholic beverage emitting from Tronson's breath.  The officer observed that Tronson had red and glassy eyes and that Tronson's speech was slurred.  Officer Maalo asked Tronson if he was willing to participate in an SFST.  Tronson agreed.  As Tronson exited his vehicle, he wobbled and dragged his feet.  Tronson was not free to leave the scene.

Prior to administering the SFST, Officer Maalo asked Tronson eight preliminary questions, which are known as medical rule-out questions:  Do you have any physical defects or speech impediments; are you taking any medications; are you under the care of a doctor or dentist for anything; are you under the care of an eye doctor; are you epileptic or diabetic; do you have an artificial or glass eye; are you blind in either eye; and do you wear corrective lenses.  Tronson answered no to all of the questions.

The SFST consists of three tests and prior to administering them, Officer Maalo gave Tronson instructions, asked him if he understood the instructions, and asked him if he

had any questions.  Officer Maalo told Tronson that he would be judged on how well he followed the instructions.  Tronson was not advised of his <u>Miranda</u> rights at any point.[4]  After the SFST was performed, Tronson was arrested for OVUII.

Tronson filed a motion to suppress statements.  At the hearing on the motion to suppress, in addition to the above, Officer Maalo testified that when he stopped Tronson, he already had all of the elements for a reckless driving charge and that he could have arrested Tronson when he first engaged Tronson because he had probable cause to arrest Tronson for Reckless Driving.[5]  After the hearing concluded, the District Court found (and concluded) that Officer Maalo had probable cause to arrest Tronson for Reckless Driving when the officer first approached Tronson and Tronson was still sitting in his vehicle.  The District Court's COLs that are challenged on appeal state as follows:

> 6.      At the time when Officer Maalo first approached
>         Defendant while he was seated in his vehicle, there
>         existed probable cause to arrest Defendant for the
>         offense of Reckless Driving; and Defendant was not
>         free to leave.  Accordingly, at this time, Defendant
>         was "in custody" for Miranda purposes.
>
> . . . .

---

[4]    See <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[5]    HRS § 291-2 (2007) provides:

**§ 291-2  Reckless driving of vehicle or riding of animals; penalty.**  Whoever operates any vehicle or rides any animal recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle or reckless riding of an animal, as appropriate, and shall be fined not more than $1,000 or imprisoned not more than thirty days, or both.

9.  When Officer Maalo informed Defendant that he was being pulled over for speeding and almost causing a collision, it was a statement reasonably likely to elicit an incriminating response.  It was reasonably likely that Defendant would respond to the statement by apologizing or explaining his actions, thereby incriminating himself.  As such, Officer Maalo's statement to Defendant about why Defendant was pulled over qualifies as interrogation for Miranda purposes.  Accordingly, Defendant's response is suppressed.

10.  Pursuant to State v. Ferm, 94 Haw. 17 (2000), a subject's refusal to participate in the SFST can be used at trial to show consciousness of guilt.  As such, inviting a subject to participate in the SFST is reasonably likely to elicit an incriminating response.  Therefore, Defendant's response to being asked if he'd like to participate in the SFST is suppressed.

11.  In State v. Vliet, 91 Haw. 288 (1999), the supreme court ruled that consumption of alcohol only needs to be a contributing factor in a defendant's impairment.  Further, State v. Eli, 126 Haw. 510 (2012), held that an incriminating response refers to both inculpatory and exculpatory responses.  In an OVUII investigation, where alcohol need only be a contributing factor in a defendant's impairment, the MRO questions are reasonably likely to elicit an incriminating response.  As such, Defendant's responses to all MRO questions are suppressed.

12.  Defendant was told by Officer Maalo, "You will be judged on how well you follow the instructions . . ."  Officer Maalo testified that how well a subject follows his instructions during the SFST may provide insight into the subject's mental faculties.  Further, if a subject states that he understands the instructions and has no questions, then any deviation from the instructions while performing the tests is likely to be attributed to impairment by alcohol.  As such, providing the instructions to Defendant and asking him if he understands the instructions is reasonably likely to elicit an incriminating response.  Therefore, Defendant's response to whether he understands the instructions is suppressed.

13.  "The fruit of the poisonous tree [doctrine] prohibits the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police."  State v. Fukusaku, 85 Hawaii 462, 475 (1997).  Officer Maalo testified that he would not administer the SFST without (1) receiving consent from the subject; (2) going thru [sic] the MRO; and (3) assuring that the subject understands the instructions to each test and has no questions.  As such, if any of these questions or sets of questions are suppressed then the results of the SFST become fruit of the poisonous tree.  Accordingly, the results of the SFST in its entirety are suppressed.

On May 9, 2019, the District Court entered the Judgment, which granted Tronson's motion to suppress statements.

II. POINT OF ERROR

On appeal, the State raises a single point of error, contending that the District Court erred in COLs 6, and 9 to 13, and in ordering that Tronson's statements are suppressed, because Tronson was not in custody or seized until after he took the SFST and was arrested for OVUII.

III. APPLICABLE STANDARDS OF REVIEW

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution.

State v. Estabillio, 121 Hawaiʻi 261, 269, 218 P.3d 749, 757 (2009) (citations omitted).

A ruling on a motion to suppress is reviewed *de novo*, and the appellate court must look at the entire record on appeal to determine whether the ruling was right or wrong. State v. Joseph, 109 Hawaiʻi 482, 493, 128 P.3d 795, 806 (2006). The District Court's COLs are also reviewed *de novo*. See id.

IV. DISCUSSION

The State contends that the District Court erred in suppressing Tronson's responses to the medical rule-out questions, Tronson's responses to the SFST instructions, Tronson's statement in response to why he was stopped, Tronson's performance on the SFST, and any statements Tronson made after

6

the SFST[6] because <u>Miranda</u> warnings had not been read to Tronson immediately upon his being stopped.  The State submits that <u>Miranda</u> warnings were not required because Tronson was not in custody or interrogated until after the SFST was administered and he was arrested for OVUII.

We recently addressed these issues in <u>State v. Sagapolutele-Silva</u>, CAAP-19-0000491, 2020 WL 1699907 (Haw. App. Apr. 8, 2020), wherein, under similar circumstances, we considered the application of the well-established constitutional principle that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a defendant unless the defendant has first been advised of his or her <u>Miranda</u> rights.

In <u>Sagapolutele-Silva</u>, we examined the Hawaiʻi Supreme Court's decisions in <u>State v. Wyatt</u>, 67 Haw. 293, 687 P.2d 544 (1984), and <u>State v. Kaleohano</u>, 99 Hawaiʻi 370, 56 P.3d 138 (2002), before turning to the question of whether Sagapolutele-Silva's suppressed statements stemmed from custodial interrogation.  <u>Sagapolutele-Silva</u>, 2020 WL 1699907 at *4-5.  In <u>Wyatt</u>, where the defendant was briefly detained and therefore seized, but not in custody or coercively questioned, the supreme court held that <u>Miranda</u> warnings were not required before she was

---

[6]     None of the FOFs and COLs identify any statements made after the SFST.  On appeal, the State fails to identify any such statements.  To the extent Tronson made any statements to Officer Maalo after the SFST, the State's argument that the District Court erred in suppressing such statements is waived.

asked if she had been drinking. Wyatt, 67 Haw. at 297-301, 687 P.2d at 548-50. The supreme court further concluded that the SFST that the defendant performed was not constitutionally infirm because the test sought only an exhibition of her physical characteristics of coordination, rather than communications or testimony, even though its purpose was to gather evidence of criminal conduct. Id. at 302-03, 687 P.2d at 551. In Kaleohano, the supreme court noted that if probable cause to arrest or sustained and coercive questioning were present, then questions posed by the police could amount to custodial interrogation. Kaleohano, 99 Hawaiʻi at 377, 56 P.3d at 145. The court concluded that because there was no probable cause to arrest the defendant, and in light of the fact that the officer did not subject the defendant to sustained and coercive questioning, the officer was not required to give the defendant a Miranda warning prior to asking her if she had been drinking. Id. at 377-78, 56 P.3d at 145-46.

Here, we must examine whether, under the totality of the circumstances, Tronson's suppressed statements stemmed from custodial interrogation. Tronson was not in custody merely because he was seized in connection with a traffic stop. State v. Ah Loo, 94 Hawaiʻi 207, 211, 10 P.3d 728, 732 (2000). To determine whether an interrogation is custodial, the totality of the circumstances analysis focuses on "the place and time of the interrogation, the length of the interrogation, the nature of the

questions asked, the conduct of the police, and [any] other relevant circumstances[.]" Id. at 210, 10 P.3d at 731 (citing State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)); see also State v. Kazanas, 138 Hawai'i 23, 35, 375 P.3d 1261, 1273 (2016) (reiterating same).  In this regard, the supreme court has acknowledged that "no precise line can be drawn" between "custodial interrogation," on the one hand, and "permissible general on-the-scene questioning," on the other.  Ah Loo, 94 Hawai'i at 210, 10 P.3d at 731 (citing State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)) (brackets omitted).  Custodial interrogation is comprised of two components, "interrogation" and "custody."  Kazanas, 138 Hawai'i at 35, 375 P.3d at 1273.  The totality of the circumstances test applies to custodial interrogation, "in the sense that the defendant is deprived of his or her freedom of action in any significant way."  Id.  In contrast, "the touchstone in analyzing whether 'interrogation' has taken place is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'"  Id. at 38, 375 P.3d at 1276 (brackets and citation omitted).

We first consider whether the District Court erred in COL 6 by finding that there was probable cause to arrest Tronson for Reckless Driving when he was initially stopped.  In State v.

Agard, 113 Hawaiʻi 321, 322, 151 P.3d 802, 803 (2007), the

supreme court explained:

> We hold that (1) the reckless state of mind definition under HRS § 702-206(3) (1993) applies to the reckless driving statute, HRS § 291-2; (2) in determining whether an identified risk is substantial and unjustifiable under HRS § 702-206(3), the nature and degree of the risk disregarded by the actor, the nature and purpose of his conduct, and the circumstances known to him in acting must be weighed; (3) in this case a reckless state of mind can be inferred from the circumstances to conclude that there was conscious awareness of a substantial and unjustifiable risk to the safety of others and property on the part of Respondent; and (4) deference must be given to the trier of fact with respect to questions of credibility and weight of the evidence.

In other words, it must be shown that the "Defendant

knew whether 'the safety of persons or property' was in peril."

State v. Quinn, No. 30111, 2010 WL 2675349, at *1 (Haw. App. July

7, 2010) (SDO) (quoting State v. Moleta, 112 Hawaiʻi 233, 240,

145 P.3d 776, 783 (App. 2006)).

As set forth above, at the hearing on Tronson's motion

to suppress statements, Officer Maalo testified that Tronson

passed the officer's car on the left and then abruptly swerved

back into the officer's lane, causing the officer to slam on his

brakes in order to avoid a collision.  Officer Maalo caught up

with Tronson's vehicle, activated his blue lights and siren, and

Tronson's vehicle came to a stop in a shopping center.  We

conclude that the District Court did not err in concluding that,

at this initial point of the stop, a person of reasonable caution

would have been warranted in believing that Tronson had a

conscious awareness that his driving had posed a substantial and

unjustifiable risk to the safety of others and property, to wit,

Officer Maalo and/or his vehicle.  See HRS § 291-2; Agard, 113 Hawaiʻi at 322, 151 P.3d at 803; State v. Maganis, 109 Hawaiʻi 84, 86, 123 P.3d 679, 681 (2005) ("Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed.  This requires more than a mere suspicion but less than a certainty."  (Emphasis and citation omitted)).  Accordingly, the District Court did not err in concluding that Officer Maalo had probable cause to arrest Tronson for Reckless Driving at this point.

That said, Officer Maalo was not required to provide Tronson with Miranda warnings prior to informing Tronson of why he was stopped.  As we recently held in Sagapolutele-Silva, "[g]enerally, informing a defendant of the reason for being stopped or arrested does not constitute custodial interrogation likely to elicit an incriminating response."  Sagapolutele-Silva, 2020 WL 1699907 at *9 (citations omitted); see Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (holding that the term "interrogation" does not include "words or actions on the part of the police [that are] normally attendant to arrest and custody"); United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir. 1994) ("[W]hen an officer informs a [suspect] of [the] circumstances" of his arrest or explains evidence against him, "this information may be considered normally attendant to arrest

11

and custody." (quoting United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984))).  Officer Maalo informing Tronson of why he was stopped did not amount to an "interrogation" and Miranda warnings were not required.  The District Court erred in COL 9 in concluding that there was an interrogation at this point and in suppressing the statement Tronson made in response to being informed of the reason that he was stopped.

As we further noted in Sagapolutele-Silva, there is no requirement for the police to arrest a suspect once probable cause is established.  Sagapolutele-Silva, 2020 WL 1699907 at *6 (citation omitted).  The police need not halt an investigation the moment they have the minimum evidence to establish probable cause because it may fall short of evidence necessary to support a criminal conviction.  Id.  Nevertheless, "[a]n individual in police custody may not be subjected to interrogation without first being advised of his Miranda rights."  Id. (citation and internal quotation marks omitted).

Under the totality of the circumstances in this case, Tronson was in custody for Reckless Driving.  Officer Maalo had probable cause to arrest him for Reckless Driving when he stopped him.  In addition, as discussed below, upon his initial conversation with Tronson, Officer Maalo had a reasonable suspicion that he was driving while intoxicated.  Officer Maalo testified that Tronson was not free to leave from the time he was stopped.  Under the totality of the circumstances, the District

Court did not err in COL 6 in concluding that Tronson was in custody and that Tronson should have been given <u>Miranda</u> warnings prior to any interrogation.

Nevertheless, the investigation for OVUII in this case constituted a separate and distinct investigation, albeit related to the initial traffic stop, and it required an independent reasonable suspicion.  <u>See</u> <u>generally</u> <u>Estabillio</u>, 121 Hawaiʻi at 273, 218 P.3d at 761.  There was reasonable suspicion that Tronson was operating a vehicle while intoxicated based upon his driving; his red, watery, and glassy eyes; and the smell of alcohol on his breath.  <u>State v. Barrickman</u>, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (there was reasonable suspicion to investigate driving while intoxicated based on defendant's glassy eyes and smell of alcohol on breath).  However, red and glassy eyes alone and imperfect driving are insufficient to establish probable cause to arrest a person for OVUII.  <u>Kaleohano</u>, 99 Hawaiʻi at 377-78, 56 P.3d at 145-46.

As noted by the supreme court in <u>Kernan v. Tanaka</u>, 75 Haw. 1, 38 n.23, 856 P.2d 1207, 1226 n.23 (1993):

> Usually, the police administer a field sobriety test consisting of specific procedures when a driver has been stopped as a DUI suspect.  If a driver does not exit voluntarily, the police must order him or her out of the vehicle even though probable cause to arrest may not have been established.  Should the suspect fail the test, an arrest will ensue.  Thus, it is the test failure that provides the police with probable cause to arrest.  We do not require the police to have probable cause to arrest prior to the administration of the field sobriety test because such a requirement unduly burdens law enforcement.

"Field sobriety tests are designed and administered to avoid the shortcomings of casual observation." Wyatt, 67 Haw. at 302, 687 P.2d at 551 (brackets omitted).  Here, Officer Maalo did not initially have probable cause to arrest Tronson for OVUII simply based upon noticing that he had red, glassy eyes, and an odor of alcohol on his breath.  And, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him, such as when a driver is asked to participate in a SFST.  Id.  As discussed in Sagapolutele-Silva, the Wyatt court held that since performance on an SFST was neither communication nor testimony, the trial court did not err by refusing to suppress the officer's SFST observations.  Sagapolutele-Silva, 2020 WL 1699907 at *7 (citing Wyatt, 67 Haw. at 301-03, 687 P.2d at 550-51).

In addition, in Pennsylvania v. Muniz, 496 U.S. 582, 603-04 (1990), the United States Supreme Court rejected the contention that Miranda warnings are required prior to an inquiry as to whether a defendant understood SFST instructions, because the "focused inquiries were necessarily 'attendant to' the police procedure held by the court to be legitimate."  Accordingly, asking Tronson whether he understood the instructions to the SFST did not implicate his right to self-incrimination.  Thus, we conclude that the District Court erred in COLs 10, 12, and 13 by suppressing Tronson's response to whether he would participate in

14

the SFST, whether he understood the instructions to the SFST, and the officer's observations of his performance on the SFST.

However, due to Tronson being in custody for Reckless Driving, the medical rule-out questions, which were asked in relation to the OVUII investigation here, constituted interrogation warranting Miranda warnings.  As we noted in Sagapolutele-Silva, other courts have observed that the failure to provide a Miranda warning when an individual is in custody for one crime will taint an interrogation even if the interrogation relates to a different crime.  See Mathis v. United States, 391 U.S. 1, 2, 4-5 (1968) (noting that there is "nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody"); see also, e.g., People v. Bejasa, 140 Cal. Rptr. 3d 80, 91 (Ct. App. 2012); State v. Lawler, No. L-96-223, 1997 WL 77511, *1-2 (Ohio Ct. App. Feb. 21, 1997); State v. Lien, No. 32443-5-III, 2016 WL 4267689 (Wash. Ct. App. Aug. 11, 2016).  Here, Officer Maalo testified that Tronson was not free to leave during his encounter with Tronson in connection with his investigation into OVUII, and there was nothing to indicate that Tronson was free to go about his business before being questioned about OVUII.  Tronson was in custody for Reckless Driving when the medical rule-out questions were posed.

"[T]he touchstone in analyzing whether interrogation has taken place is whether the police officer should have known that his [or her] words and actions were reasonably likely to elicit an incriminating response from the defendant." Kazanas, 138 Hawaiʻi at 38, 375 P.3d at 1276 (citation and internal quotation marks omitted). Relying upon Innis, 446 U.S. 291 (1980), Kazanas reiterated that "interrogation consists of any express question - or, absent an express question, any words or conduct - that the officer knows or reasonably should know is likely to elicit an incriminating response." Id. (citation and internal quotation marks omitted). An incriminating response is any response, either inculpatory or exculpatory. Innis, 446 U.S. at 301 n.5. In contrast, a physical inability to articulate words in a clear manner due to lack of muscular coordination of the tongue and mouth is not testimonial evidence for purposes of self-incrimination. Muniz, 496 U.S. at 590-91.

In this case, the District Court's FOF 10 identified the medical rule-out questions posed to Tronson as follows:

> i.    Do you have any physical defects or speech impediments?
> ii.   Are you taking any medications?
> iii.  Are you under the care of a doctor or dentist for anything?
> iv.   Are you under the care of an eye doctor?
> v.    Do you have an artificial or glass eye?
> vi.   Are you epileptic or diabetic?
> vii.  Are you blind in either eye?
> viii. Do you wear corrective lenses?

Based on, *inter alia*, our analysis in Sagapolutele-Silva, we conclude that the medical rule-out questions posed to Tronson were reasonably likely to elicit an incriminating

response and, therefore, constituted interrogation.  See Sagapolutele-Silva, 2020 WL 1699907 at *7-8.

Tronson was in custody.  He had not been given Miranda warnings.  The medical rule-out questions constituted interrogation.  Thus, we conclude that his responses to those questions should have been suppressed and the District Court did not err in so concluding in COL 11.

V.    CONCLUSION

For these reasons, the May 9, 2019 Judgment is affirmed in part and vacated in part.  This case is remanded to the District Court for further proceedings.

DATED: Honolulu, Hawaiʻi, June 30, 2020.

On the briefs:

                                    /s/ Lisa M. Ginoza
Brian R. Vincent,                   Chief Judge
Deputy Prosecuting Attorney,
City and County of Honolulu,        /s/ Katherine G. Leonard
for Plaintiff-Appellant.            Associate Judge

Alen M. Kaneshiro,                  /s/ Derrick H.M. Chan
for Defendant-Appellee.             Associate Judge